## HAWKSHAW *v.* SUPREME LODGE OF KNIGHTS OF HONOR.

*(Circuit Court, N. D. Illinois. January 17, 1887.)*

1. BENEVOLENT SOCIETIES—PROCEEDINGS—RECORDS—EVIDENCE.

   While it is permitted to contradict the record of a voluntary society, or show that such records do not fully disclose all the proceedings of a body which ought to be recorded, proof of that kind must be so convincing and satisfactory as to leave no doubt but what the matter attempted to be interpolated into the records of the proceedings actually occurred.

2. SAME—RULES—SUSPENSION OF MEMBERS.

   In a voluntary society in which the standing of its members, and the mode of suspending and reinstating them in membership, is regulated by its laws, if the records of the proceedings of the body show that a member is not in good standing, he must be bound by these records, and the action of his society in that regard; especially when he has exercised his right of appeal, and the action of which he complains has been affirmed by the appellate tribunal.

3. LIFE INSURANCE—BENEVOLENT SOCIETIES—ASSESSMENTS—PAYMENT—INSANITY.

   The rule that insanity is no excuse for non-payment of premiums or assessments of life insurance policies applies to the payment of assessments of benevolent societies.

At Law.

*E. G. & W. C. Asay*, for complainant.

*C. C. & C. L. Bonney*, for defendant.

BLODGETT, J. This a suit for the collection of the sum of $2,000, which it is claimed accrued and became payable to the complainant from the defendant on the death of her husband, William Hawkshaw, by reason of the terms of the benefit certificate issued to him by the defendant lodge. The defendant is a corporation organized under the laws of Kentucky, and one of the objects of the corporation is declared to be the establishment of a "widows' and orphans' benefit fund," from which, on satisfactory evidence of the death of a member of the corporation in good standing at the time of his death, and who has complied with its lawful requirements, a sum to be determined by the lodge, not exceeding $2,000, shall be paid to his family, or as he may direct. The organization consists of the supreme lodge; grand lodges in states, territories, and countries; and subordinate lodges for local work in cities and towns.

William Hawkshaw was, in his life-time, a member of the Star of the West Lodge, one of the subordinate lodges of the order located in the city of Chicago; and in June, 1881, there was issued to him a benefit certificate, by which the defendant agreed on his death, provided he was then in good standing in the order, to pay out of its widows' and orphans' fund to his wife, Margaret Hawkshaw, the sum of $2,000, in accordance with and under the laws governing the order. This widows' and orphans' benefit fund of the supreme lodge, the defendant in this case, is derived from the collection of assessments upon the members; and one of the provisions of the constitution of the order is that each member shall pay an assessment made on him for this purpose within 30 days from the date of notice to pay the same, "and any member failing to pay such assessment within 30 days shall stand suspended."

It is conceded that this member died on August 19, 1884, and the only question is whether he was a member of the order in good standing at the time of his death. It appears from the proofs that on July 6, 1883, Hawkshaw paid assessment No. 121, of $1.30; that assessment No. 122, of the same amount, became due August 12, 1882, and was not paid by him, but was paid by the Star of the West Lodge, of which he was a member, pursuant to section 7 of article 8 of the by-laws of said lodge, which provides:

"If any member is in arrears with one assessment at the expiration of 30 days, the lodge shall pay the same out of its general fund, and attach a fine of twenty-five cents to it, and at the same time notify such delinquent; and he must pay the same assessment and fine within 30 days of such notice, but no more than one assessment shall be paid for each member."

On the seventeenth of August, 1883, Hawkshaw made default in the payment of assessment No. 123, for the amount of $1.30, and on the twenty-fourth of August, 1883, he was reported to his subordinate lodge as suspended for the non-payment of assessments, and such suspension ordered to be reported to the supreme lodge; and between July 31, 1883,

and the time of Hawkshaw's death, in August, 1884, 17 or more assessments of $1.30 were made, none of which were paid by him, or by any one for him. The constitution of this subordinate lodge (the Star of the West) also provides that any member who has been suspended for non-payment of dues, fines, or assessments, applying to be reinstated, must pay all arrears for dues, assessments, and fines charged at the date of such suspension; but such application for reinstatement must be made within one year; and, in case the application for reinstatement is made within 30 days of the time of such suspension, no medical certificate shall be required, unless so ordered by the lodge. That is, as I construe the rule, (section 3, art. 7,) a medical examination and certificate are required, as a matter of course, if application for reinstatement is made after 30 days from the date of suspension, but, if made within the 30 days, it is in the discretion of the lodge to require such medical examination and certificate. It also appears from the proof that from some time in June, 1883, perhaps as early as April of that year, Hawkshaw was mentally disordered, and at times insane, although no steps were taken to have him adjudged insane until February, 1884. From which, together with the other evidence in the case, I conclude that he was insane, at intervals,—say from April, 1883,—up to the time he was so adjudged, in February, 1884.

The records of the Star of the West Lodge show that on October 12, 1883, a motion was made by a member of the lodge to set aside the suspension of Hawkshaw, and reinstate him as a member, on the ground that he was insane at the time of the suspension, and was therefore unlawfully suspended. This motion was not entertained by the lodge, for the reason that it was made more than 30 days after the suspension, and was not accompanied by a medical certificate. An appeal from this action of the lodge was taken to the grand lodge of Illinois, where the action was affirmed, and this ruling of the grand lodge seems to have been reported to and approved by the supreme lodge. At least, no appeal was taken from the grand lodge to the supreme lodge, and the action of the former must therefore be held to be final, so far as the action of the order was concerned. Proof was offered tending to show that the motion to reinstate was made at an earlier date, and within 30 days from the time of the suspension, and that, for some reason, this motion was not entered of record; but, from all the testimony in the case, I have no doubt that the motion of October 12th, to reinstate, was the first motion made in the lodge on the subject, and that no earlier motion was brought before them.

While it may possibly be allowed to contradict the records of a voluntary society like this, or show that such records do not fully disclose all the proceedings of a body which ought to be recorded, yet it is clear that proof of that kind must be so convincing and satisfactory as to leave no doubt but what the matter attempted to be interpolated into the records of the proceedings of the body actually occurred. None of the witnesses by whom it is attempted to prove this alleged earlier effort at reinstatement speak by any *data* to strengthen or support their recollection, but

simply say they are sure it was less than 30 days after the suspension. Other witnesses are equally certain that they attended all the meetings, and that no such motion was made until that shown by the records. Therefore I say the proof of this motion within 30 days falls far short of such certainty as should be made in order to entitle it to supply the place of a record entry which had been neglected or omitted in the due course of the business of the body. It appears from the proof that the records of each meeting were read at the next succeeding meeting, and were subject to correction at such succeeding meeting; and it seems to me almost incomprehensible that if a motion of as much interest as this case seems to have excited had been made, and yet not duly entered of record, the omission could have passed the next meeting unnoticed.

· But, even if such a motion was made, there is no proof of any offer to pay the dues and assessments which were in default at the time of suspension. It is true there is proof of a visit made about the tenth of August, 1883, by Mrs. Hawkshaw to Mr. Stein, who had been reporter or secretary of the lodge, and a statement to him of her readiness to pay all assessments. But that proof is wholly immaterial, because it appears that Mr. Stein was not then an officer of the lodge, and had no authority to accept payment of what was then due, and referred Mrs. Hawkshaw to the proper officer of the lodge to make such payments if she wished; but, for some reason, she dropped the matter there, and made no further attempt at payment, and no payment was made or offered by her to any officer of the lodge who had authority to accept it. So that we have the clearly-established fact that Hawkshaw had been suspended from his membership in this order about a year before his death for non-payment of assessments to keep up the very fund out of which the plaintiff now insists she shall be paid. But it is urged that this suspension was unlawful, because he was insane at the time he made the default for which he was suspended. There being no provision in the constitution or laws of this organization which declares, either expressly or by implication, that insanity shall be any excuse for default or forfeiture in the paying of assessments, I can see no reason why this case differs in principle on this point from the numerous cases that have been decided by the courts where insanity or incapacity from sickness has been urged as a reason why advantage should not be taken of a default in the non-payment of premiums or assessments of life insurance policies, and in that class of cases the rule seems fully sustained that insanity is no excuse for non-payment. *Klein* v. *Insurance Co.*, 104 U. S. 88; *Thompson* v. *Insurance Co.*, 1d. 252; *Wheeler* v. *Life Ins. Co.*, 82 N. Y. 543; *Howell* v. *Life Ins. Co.*, 44 N. Y. 276; *Yoe* v. *Benevolent Ass'n*, 63 Md. 86.

If there is any distinction to be made between these cases and the one now in hand, it would seem that this is a stronger case against the beneficiary; because here the jurisdiction of the lodge was invoked to set aside the suspension and reinstate the member, and the lodge denied the relief. Indeed, I think this case might be wholly disposed of on the ground that this being a voluntary society, in which the standing of its

members and the mode of suspending and reinstating them in their membership was regulated and provided for by the laws of the society, if the records and proceedings of the body show that a member is not in good standing, he must be bound by these records and the action of his society in that regard, especially when he has exercised his right of appeal, and the action of which he complains has been affirmed by the appellate tribunal. The society, by its own laws, being made the judge of the standing of its members, such members are bound by its action on that subject, and I feel very clear that the courts ought not to entertain revisionary supervision over the action of such bodies when dealing with their members, except, perhaps, when fraud is charged and proven.

It is also urged that as this subordinate lodge has what was called a "sick fund," out of which members who should be sick for a week's time were entitled to be paid five dollars a week for not exceeding 13 weeks, therefore the subordinate lodge should have applied enough of this "sick fund" to pay this member's assessment to the supreme lodge so as to keep him in good standing. It is a sufficient answer to this proposition, I think, to say that the subordinate lodge assumed no such obligation to its members, under its constitution or by-laws. It does assume to pay one assessment, to save the member from default, and only one; and this must be reimbursed to his lodge within 30 days after notice of such payment, or he will be in default; and it also provides for payment of fines and dues of a sick member out of his weekly benefits, so as to prevent him from being in arrears to his own lodge while sick; but it does not assume to keep up the assessments made for the widows' and orphans' benefit fund, out of which death benefits like this are to be paid. A member may lose his standing in his subordinate lodge by failing to pay his dues and fines to that lodge, and may also lose it in the supreme lodge by failing to pay the assessments of the supreme lodge for the support of the widows' and orphans' benefit fund; but with the payment of assessments to this fund the subordinate lodge has nothing to do, except to pay one assessment, and this was done by payment of assessment No. 122, when the lodge's entire duty to this member was performed. The "sick fund" of the subordinate lodge and the "widows' and orphans' benefit fund" of the supreme lodge are entirely separate, and the subordinate lodge has no right to apply the sick fund to the payment of assessments for the "widows' and orphans' benefit fund." Besides this, there is no proof that Mr. Hawkshaw was at any time prior to his suspension even in condition to be entitled to the sick benefits. No visiting committee had ever reported him sick, and no benefits had ever been allowed or directed to be paid him. He was at times mentally disordered during the summer of 1883, but was about, and not even alarmingly affected, till about the twentieth of September, and this attack seems to have been only temporary at that time.

The issues are found for the defendant, and judgment.