ELMER *v.* MUTUAL BENEFIT LIFE ASS'N OF AMERICA.

*(Supreme Court, General Term, First Department. June 3, 1892.)*

1. MUTUAL BENEFIT INSURANCE—ACTION ON CERTIFICATE—BURDEN OF PROOF.

In an action on a mutual benefit certificate, an allegation in the complaint that all the conditions of the contract were fulfilled by the assured, even when denied by the answer, does not give plaintiff the burden of proving that each particular condition was fulfilled.

2. SAME—PLEADING AND PROOF.

In an action on a mutual benefit certificate, where the answer admits that its mortuary fund contains more than the amount of the certificate, plaintiff is not required to prove that the fund contains that amount applicable to the payment of the certificate.

3. SAME.

In an action on a mutual benefit certificate, plaintiff need not prove that the assured paid all the premiums assessed against him, since the failure to pay is an affirmative defense, the burden of which rests on defendant.

4. SAME—MISREPRESENTATIONS.

In an action on an insurance policy, it is not error for the court to refuse to dismiss the action on proof of untrue answers to questions in the application, unless those particular misrepresentations were pleaded as a defense, though misrepresentations as to other matters may have been pleaded, nor is the court even required to submit to the jury the question of misrepresentations not pleaded.

5. SAME—NONPAYMENT OF ASSESSMENT—FORFEITURE.

Where the holder of a mutual benefit certificate dies after he has been notified of an assessment, but before the time allowed for its payment, his failure to pay does not forfeit the certificate.

6. SAME.

Though the holder of a mutual benefit certificate before his death may have failed to pay an assessment which he was notified to pay, the certificate is not forfeited if the notice did not state, as required by Laws 1876, c. 341, as amended by Laws 1877, c. 321, that unless it was paid the certificate would be forfeited.

7. SAME—WAIVER BY SUBSEQUENT ASSESSMENT.

Where a mutual benefit association makes an assessment on a member, it waives the right to claim a forfeiture of his certificate for failure to pay a premium or assessment previously due.

Appeal from circuit court, New York county.

Action by Sara F. Elmer against the Mutual Benefit Life Association of America. From a judgment entered on a verdict for plaintiff, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and O'BRIEN and BARRETT, JJ.

*E. T. Lovatt,* (*W. H. H. Ely,* of counsel,) for appellant. *John B. Pine,* (*Austen G. Fox,* of counsel,) for respondent.

O'BRIEN, J. This action was brought to recover the sum of $10,000 upon a certificate of membership issued by defendant to Richard A. Elmer, November 5, 1887. This certificate provided that, "in consideration of the representations, agreements, and warranties made in the application for this policy, and of the payment of the expense premium of sixty dollars, and of the further expense premium of thirty dollars, to be paid on or before the 5th day of November in each and every year during the continuance of this policy, and of all mortuary premiums  *  *  *  within thirty (30) days from the date of each notice," the defendant, upon satisfactory proof being furnished of the death of the member, should the policy of membership then be in force, would pay to Sarah F. Elmer the sum of $10,000. The complaint alleges that during the continuance of the policy, and on or about the 1st of October, 1888, Elmer died in the city of New York, leaving his wife, the plaintiff, him surviving; that on the 15th of October, 1888, and more than 60 days prior to the commencement of the action, the plaintiff gave notice and proof of his death. It then alleges the due performance and compliance with all the provisions and agreements contained in the policy, and demand on the defendant for payment, and a refusal. Excepting the issuance of the policy, the an-

swer, in effect, contains a specific denial of the allegations of the complaint, and in addition sets up two affirmative defenses: One, that a regular mortuary premium call was issued to Elmer in September, 1888, requiring the payment of $24.40 within 30 days from said date, which was not paid, which caused a lapse of the policy in thus failing to comply with one of its essential conditions. The second affirmative defense was that Elmer agreed that, if any fraudulent or untrue answers should be made by him to any of the questions propounded upon application for a policy, such would render the policy void. The statements which it is alleged were untrue were that he had never had any disease of the bladder or urinary organs, and had never had any severe illness or injury. Upon the trial the plaintiff introduced a witness, who proved the fact of death, and then rested. Thereupon the defendant moved to dismiss the complaint upon various grounds. Among those specifically enumerated were that there was no evidence of the payment of the mortuary premiums as they became due; that plaintiff had not furnished proof of death within the time, as required by the policy; that no evidence was given of due performance of the conditions of the policy, or that it was still valid and in full force, or that the mortuary premiums or calls had been paid, or that the mortuary fund of defendant contained the sum of $10,000 applicable to the payment of this policy.

Whether any of these grounds were sufficient to justify the dismissal of the complaint, an examination of the pleadings and of the issues raised thereunder, and what burden, if any, was thus placed upon the plaintiff, can alone determine. Ordinarily, in actions upon policies of insurance, all that is essential to make out a cause of action is a statement of the contract, the death of the assured, and the failure to pay as provided. The allegation that all the conditions were fulfilled by the assured, though proper in the complaint, even when denied by the answer, does not place upon the plaintiff the burden of proving that each particular condition or agreement was fulfilled. Here, the answer having admitted that the mortuary fund of the defendant contained more than $10,000, and the fact that proofs of death were furnished, and not having denied the allegation that they were furnished on or about October 15, 1888, there remained nothing for plaintiff to prove except the policy and the death of the insured. The other grounds urged for a dismissal related to affirmative defenses, the burden of supporting which rested upon the defendant. The motion, therefore, was properly denied at this stage of the case.

The other questions presented upon this appeal relate to the weight of evidence, and to law upon the facts proved, and particularly to a submission of the questions to the jury as to whether any untrue answer, misrepresentation, or breach of warranty, forfeiting the policy, was made by the plaintiff's deceased husband. We do not think, if the questions were properly submitted to the jury, that defendant has any ground of complaint in respect to the number of questions presented by the trial judge. As we have already seen, the misrepresentations and breach of warranty alleged in the answer were confined to whether or not the assured had any disease of the bladder or urinary organs, or had ever had any severe illness or injury. The evidence adduced, however, in addition to these, had a tendency to show a breach of warranties other than those pleaded; and the court, in its charge, submitted to the jury the question of all the alleged breaches of warranty, whether pleaded or not. This was a course most favorable to defendant, which thus was permitted to go to the jury upon defenses not set up in the answer. It is insisted by appellant, however, that the evidence sustaining these defenses which were not pleaded was uncontradicted, and therefore that it was error to submit the questions to the jury. But we regard the rule to be settled that "a defendant company, in order to avail itself of a defense by which the policy of insurance should be forfeited by reason of untrue answers made in the application, must set forth such defense, so that it may be properly tried." The appli-

cation of this rule not only justifies the ruling of the trial judge in not dismissing upon grounds not pleaded, but would have justified a refusal to submit the questions at all to the jury. It would be destructive of all certainty and regularity in the procedure of a trial, if evidence relevant and pertinent to the issues, as fixed by the pleadings, could be, without any amendment thereto, available to support either a cause of action or a defense not pleaded.

This brings us, therefore, to a consideration of whether or not, with respect to the defenses interposed, the defendant was entitled to a direction of a verdict in its favor, or whether the questions were properly submitted to the jury. It is insisted that the defendant established, as matter of law, the defense of forfeiture, based upon its allegation that, on September 15, 1888, it had duly made a mortuary premium call for an assessment due October 15, 1888, and notified the insured thereof. It is not alleged that this premium was due September 15th; and as the notice required the payment of the premium on or before October 15, 1888, which was subsequent to the death of the assured, we do not think that any forfeiture could be based upon the failure to pay such premium, though the company would be entitled to deduct the amount thereof from the recovery had. And though we were to assume that this premium was due on September 15th, a few days prior to the death of the assured, and a failure to pay the same would work a forfeiture, it is evident that no such result would follow in this case by reason of the failure to comply with the provisions of chapter 341 of the Laws of 1876, as amended by chapter 321 of the Laws of 1877, which was an act to regulate the forfeiture of life insurance policies, and which required the defendant to show the giving of the statutory notice, and the lapse of 30 days thereafter without payment,—proof of which is wanting in this case. The notice sent, assuming it to have been received, required the payment of the mortuary premium on or before October 15, 1888; but in such notice the statement, as required by the statute, that unless paid the policy would be forfeited, was not included.

With respect to the defenses of breach of warranty, "that the insured had never had any severe illness, or disease of the urinary organs," these were not supported by evidence so conclusive as to make them questions of law. As to what does or does not constitute a severe illness may, in cases of which the present is an instance, be purely a matter of opinion, about which even doctors, who are regarded as experts, may differ. If we can assume, therefore, that a mere opinion can be the subject of a warranty, the breach of which is to be established by the opinions of experts, such expert testimony, though uncontradicted, is not conclusive. Here the defendant, to prove the affirmative defense, showed that the insured had been afflicted with what is known as "impacted renal calculus," from which undoubtedly at one time he suffered, and contended that the same constituted a severe illness or disease. The testimony of the seven physicians examined as to whether or not it was a disease of the urinary organs left the question in doubt. Three of them claimed that renal calculus was a disease of the urinary organs, while some of the others testified that the temporary ailment from which the insured had suffered prior to the application was not only not a disease of the urinary organs, but not a disease at all. We fail to see, upon such testimony, how the trial judge would have been justified in withdrawing this as a question of fact from the jury, and ruling that this defense was established as matter of law, entitling the defendant to a direction in its favor. The appellant claims that another insurmountable obstacle to supporting the judgment arises from the failure of the plaintiff to show that the primary premium of $30, provided for in the policy, was paid, insisting that such payment was a condition precedent to a recovery, which plaintiff was bound to prove. Assuming, which we doubt, that the burden was upon the plaintiff of proving such payment, it appears that the policy itself was dated on the 5th day of November, 1887,

and it was conceded that of the two expense premiums specified in the policy the one of $60 was paid. It is not made to appear whether the further expense premium of $30, which, according to the terms of the policy, was to be paid on or before the 5th day of November in each and every year during the continuance of the policy, was required to be paid at the same time, and in addition to the payment of the first expense premium of $60. If not so payable, it was not due until after the death of the insured. If it was payable, it was clearly waived by the calls for the mortuary premiums given to the insured, and which were paid subsequent to November 5, 1887,—thus constituting a clear waiver,—and which, if still due, could have been deducted from any recovery had the attention of the court been called to any such insistence upon the trial.

We have examined the charge of the trial judge, to which several exceptions were taken, none of which we regard as tenable, the charge being in all respects fair, and as favorable to defendant as could have been requested. So with respect to exceptions taken to the admission and exclusion of evidence; one only requiring a brief notice. The defendant asked of Dr. Lockwood the question: "Will you state, taking this article to refresh your memory, the various symptoms that you noted the several days that you waited upon Mr. Elmer during this period? *Answer.* Do you mean the symptoms that I noted when I saw him personally? *Q.* Yes." This question was objected to by the plaintiff, upon the ground that the doctor had stated that many of the symptoms stated in the article, which had been written for some medical journal, were not from personal observation, and that the question should not relate to facts which were not recollected by the witness himself. This objection was sustained, and the defendant excepted. While, at first glance, this ruling might seem to be erroneous, still, upon examination, it will be seen that the court in this ruling intended to restrict the answer of the witness to facts within his personal knowledge. Such facts were all that the witness had a right to testify to; and taking into consideration the faulty manner in which the question itself was framed, which referred the witness to an article describing symptoms which he had not personally known, and then coupling it with a statement that he should state the various symptoms that he noted when he waited upon the insured, it was proper for the court, under the objection of plaintiff, to restrict the question to an ascertainment of facts within the personal knowledge of the witness. Such could have been elicited by a proper question; and the failure to frame one does not place the appellant in the same position as he would be in had he asked a question calling for the personal knowledge of the witness, which, under objection, had been excluded. On the whole case, therefore, we are of opinion that no error has been assigned sufficient to justify a reversal of the judgment, which should be accordingly affirmed, with costs. All concur.