# OSTERMAN v. DISTRICT GRAND LODGE NO. 4, I. O. B. B.

## No. 15,974; January 21, 1896.

### 43 Pac. 412.

**Endowment Benefit—Pleading—Burden of Proof.**—A mutual endowment society, by alleging in its answer to an action to recover an endowment that the conditions of the contract, made by its law conditions predecent to recovery, have been fulfilled by the assured,

"except as hereinafter set forth," assumes the burden of alleging and proving nonperformance of such conditions by the assured.[1]

**Endowment Benefit—Suspension and Forfeiture.—Where the Laws** of a mutual endowment association make suspension for nonpayment of dues a forfeiture of membership benefits, and provide a formal method for suspension in such case, nonpayment of dues will not, ipso facto, work a forfeiture, though the assured was secretary of the society, and formal proceedings for suspension have not been had because he failed, as required, to report his own delinquency.

**Endowment Benefit—Payment.—In an Action by a Wife Against** a grand lodge—whose laws made membership in a subordinate lodge, and an election as member of the endowment fund, conditions precedent to a right to participate therein—to recover an endowment on her husband's membership, it appeared that, on report of the husband's death to the grand by the subordinate lodge, the grand lodge sent the amount due to the subordinate lodge, to be paid, "through the trustees," to plaintiff; that the trustees, prior to its receipt, obtained from her an order to deduct from the amount due sufficient to make good defalcations of her husband, which, as one of them testified they told her, would amount to at least $1,000. The wife testified that they said it would be about $500. The trustees subsequently obtained her receipt for the whole amount, on representations that it was necessary to procure the money from the defendant. Plaintiff, failing to receive the money, demanded it from defendant, and defendant, then first learning that plaintiff's husband was not in good standing at his death, directed the trustees of the subordinate lodge to return the amount sent to it. There was no evidence what became of this money, except that it was deposited in the bank by the trustees to whom it was delivered. Held, that a finding against defendant's plea of payment was warranted.

**Endowment Benefit—Action—Parties.—Under the above facts,** the grand lodge, and not the subordinate lodge, was the proper party to be sued.

**Endowment Benefit.—In an Action for an Endowment Benefit,** where defendant alleges in defense that plaintiff consented that the money due should be applied in paying a sum embezzled by the assured, and that it was so applied, an instruction placing the burden of proving such issue on defendant is proper.

APPEAL from Superior Court, City and County of San Francisco; John Hunt, Judge.

---

[1] Cited and approved in Sterling v. Head Camp etc. Woodmen of the World, 28 Utah, 522, 80 Pac. 380, where in the same connection the court say, "The maxim that 'equity regards that as done which ought to have been done' can here have no application."

Action by Sarah Osterman against District Grand Lodge No. 4, Independent Order of B'nai B'rith, to recover an endowment benefit. From a judgment for plaintiff and an order denying a new trial defendant appeals. Affirmed.

Marcus Rosenthal for appellant; Joseph Rothchild for respondent.

VANCLIEF, C.—Action to recover an endowment benefit of $2,000 alleged to be due the plaintiff from the defendant. The cause was tried by a jury, whose verdict was in favor of plaintiff for the sum demanded, and the judgment of the court was in accordance with the verdict. The defendant appealed from the judgment and from an order denying its motion for a new trial. The pleadings and evidence justified the jury in finding the following facts: The defendant is a fraternal and beneficial society incorporated under the laws of this state, is governed by a written constitution, and, for certain general purposes, has jurisdiction over subordinate lodges within its district. Subject to the constitution of the defendant, each subordinate lodge adopts its own by-laws governing its own finances and local affairs. The defendant cor- poration maintains a special fund, called the "Widows' and Orphans' Beneficiary Fund," supported by assessments of all members of subordinate lodges who elect to become partici- pants of the benefits of that fund, each of whom is required, by the law relating to that fund, to pay a monthly assessment of $2.50, to be collected by the subordinate lodges, and trans- mitted to the District Grand Lodge; and, after so transmitted, the subordinate lodge has no power of control over it. Funds for the support and use of the subordinate lodges are supplied by fines and quarter-yearly dues required to be paid by their members, over which funds the Grand Lodge has no control. Only those members of subordinate lodges who elect to be- come participants in the widows' and orphans' beneficiary fund are assessed for contributions to that fund; and, after so electing, they are called "Members of the Widows' and Orphans' Fund." The laws of the District Grand Lodge gov- erning the disposition of the widows' and orphans' fund, among other things, provide (section 15): "The sum of two thousand dollars shall be paid on the death of a member in good standing in the widow and orphan beneficiary fund of

this district, to his widow; if there be no widow, then to his children; and, if there be no widow or children, then to any person, persons, or institutions which the deceased member may designate in the manner prescribed in the following sections." No endowment policy or certificate is issued to a member during his life. The benefit is to be paid upon due notice to the District Grand Lodge of the death of a member of the widows' and orphans' beneficiary fund. Upon such notice the Grand Lodge, by its secretary, ordinarily transmits the money, or a check for it, to the trustees of the subordinate lodge of which the deceased was a member, directing them to pay it to the beneficiary. Ophir Lodge No. 21 is, and has been since 1880, a subordinate lodge of defendant Grand Lodge. In October, 1881, Monroe Osterman, the husband of the plaintiff, became a member of Ophir Lodge, and of the widows' and orphans' fund, and continued to be such until his death, on the twenty-ninth day of May, 1891, and, during the last three years of his life, was the secretary of said Ophir Lodge. As a member of said Ophir Lodge and of the widows' and orphans' branch of said District Grand Lodge, he was in good standing up to the time of his death, unless, for alleged reasons, to be hereinafter considered, he had lost his good standing, and had not been reinstated at the time of his death. Immediately after the death of Monroe Osterman, Ophir Lodge duly notified the Grand Lodge of the fact. Thereafter, on June 30, 1891, the treasurer of the Grand Lodge drew a check on the Bank of California for $2,000, payable to the order of the trustees of Ophir Lodge, which was sent to them by the grand secretary, inclosed in the following letter, dated July 1, 1891:

"To the Secretary of Ophir Lodge, No. 21, I. O. B. B.:

"Worthy Sirs and Brothers: We herewith transmit check for the sum $2,000 in payment of the amount due the late brother, Monroe Osterman. This amount is to be paid to the widow, through the trustees. This is accompanied by an original and duplicate receipt.

"Fraternally, yours,

"LOUIS BLANK,

"Grand Secretary."

The trustees received the check, and on July 8, 1891, deposited it with the California Safe Deposit and Trust Company. On August 12, 1891, the plaintiff, claiming that her

benefit had not been paid, made a written demand of the Grand Lodge for payment thereof, to which demand that lodge answered, in substance, that she was not entitled to any benefit, for the reason that her husband was not at the time of his death a member in good standing of either the Ophir Lodge or of the widows' and orphans' fund, because of his failure to pay certain dues to the Ophir Lodge, and certain assessments for the widows' and orphans' fund, and thereafter, on September 4, 1891, directed the Ophir Lodge, by the following letter, to return the money:

"September 4, 1891.

"Ophir Lodge, No. 21:

"Brothers: Information has reached the general committee of the Grand Lodge No. 4 that Brother Monroe Osterman, of Ophir Lodge, died May 27, 1891; was in arrears to the widows' fund at the time of his death, and therefore not entitled to the benefits of the widows' fund. As the Grand Lodge transmitted to you a check for the sum of $2,000, to be paid to the widow of said Brother Osterman, and as, under our laws, the said widow would not be entitled to the benefits of the widows' fund, and said money was transmitted to your lodge while we were ignorant of the fact of his delinquency, and therefore the money was improperly paid, we now herewith direct your lodge to at once return to the grand secretary, Louis Blank, $2,000.            Yours, fraternally,

"LOUIS BLANK,
"Grand Secretary."

Such additional facts as may be considered pertinent will be stated in considering the points to which they relate.   The defendant lodge pleaded two distinct defenses: First, that by reason of nonpayment of dues to the Ophir Lodge, and assessments for the widows' and orphans' fund, Monroe Osterman was not in good standing, as a member of the Ophir Lodge, at the time he died; and, second, that the defendant, nevertheless, paid the full amount of her benefit to the plaintiff.

1. It was admitted by defendant, at the trial, that Monroe Osterman was ostensibly in good standing, as a member and the secretary of the Ophir Lodge, up to the time of his death, and that there was not even a suspicion that he was delinquent in payment of his dues or assessments until after the Grand Lodge had transmitted to Ophir Lodge $2,000 to pay his

widow's benefit, and also that he was never expelled nor suspended from membership in Ophir Lodge or the widows' and orphans' beneficiary fund by any action of the Ophir or Grand Lodge. But counsel for appellant contends that his delinquencies, ipso facto, deprived him of his good standing as a member of the widows' and orphans' fund, without any formal act of suspension or expulsion by either lodge, and consequently deprived the plaintiff of the right to any benefit from that fund. As above remarked, there was no certificate or policy issued to Monroe Osterman, or to his wife, evidencing her right to benefits from the widows' and orphans' fund. The conditions upon which the right to benefits from that fund depend are fully expressed in the constitution or laws of the District Grand Lodge; and, whenever such right accrues, it is the direct effect of self-executing provisions of such constitution or laws. Of course, the first condition is that, being a member of a subordinate lodge, he must have elected to become a member of the widows' and orphans' beneficial fund; and it is alleged in the complaint, and not denied, that Monroe Osterman became a member of Ophir Lodge, and a participant in the widows' and orphans' beneficiary fund, on October 19, 1881, and the answer of defendant affirmatively alleges "that, at the time said Osterman became a member of said Ophir Lodge, he also became a beneficiary or participating member of said widows' and orphans' beneficiary fund, and remained such member, except as hereinafter set forth, down to the time of his death." The only other condition is that expressed in section 15, above set out, namely, that he must have been at the time of his death "in good standing in the widow and orphan beneficiary fund." Therefore, if Monroe Osterman was a member in good standing of Ophir Lodge and of the widows' and orphans' fund at the time of his death, the plaintiff was entitled to the benefit of $2,000. The express admission in defendant's answer that Osterman "remained such member down to the time of his death, except as hereinafter set forth," is sufficient prima facie evidence that he remained in good standing down to the time of his death, and cast upon the defendant the burden of pleading and proving that Osterman was not in good standing at the time of his death: Siebert v. Chosen Friends, 23 Mo. App. 268; Stewart v. Supreme Council, 36 Mo. App. 319; Supreme Lodge v. Johnson, 78 Ind. 110; Mills v. Rebstock, 29 Minn. 380, 13 N. W. 162; Elmer v.

Association, 64 Hun, 639, 19 N. Y. Supp. 289; Black, Ben. and Ins. Soc., sec. 454. This burden the defendant properly assumed, both in pleading and proof, and the only question for consideration is whether the evidence was sufficient to justify the jury in finding that Monroe Osterman was in good standing at the time of his death. The evidence introduced by defendant on this issue tended to prove only that Osterman was delinquent in payment of dues to Ophir Lodge amounting to $11.50, and in payment of assessments for the endowment fund amounting to $12.50, which were not even suspected until long after his death, and long after Ophir Lodge had certified to the Grand Lodge that he died in good standing, and nearly a month after the Grand Lodge had remitted to the trustees of Ophir Lodge the $2,000, with direction to pay it to plaintiff. It appeared that Osterman's salary as secretary of Ophir Lodge was $200 a year, and that a portion of it more than equal to the delinquent dues and assessments was unpaid at the time of his death; but it is claimed by appellant that the unpaid salary should have been applied to certain defalcations of the secretary, which were not discovered until after his death, and after Ophir Lodge had certified to his good standing at the time of his death, and which will be considered in connection with the plea of payment.

That the failure of a member of the widows' and orphans' beneficiary fund to pay an assessment within the time required by the laws of the society does not, ipso facto, operate to suspend him, or to affect his good standing, is apparent from the following extracts from those laws: Article 9 of the by-laws of Ophir Lodge provides: "Whenever an assessment is levied by District Grand Lodge No. 4, to pay an endowment, such assessment shall be paid by the members as provided by the general laws of this district." Section 25 of the general laws of the district provides: "A beneficiary member who fails to pay his assessments to the lodge within thirty days after the same has been levied by the secretary shall be suspended, without notice, from the benefits of the widow and orphan beneficiary fund, of which suspension the grand secretary must at once be notified. After the member becomes delinquent in two consecutive assessments, the amounts accruing therefrom, and from every subsequent assessment, shall be charged to his account as lodge dues." This implies that a member may be suspended from the widows' and orphans'

fund, and still remain a member of the subordinate lodge. A by-law of Ophir Lodge requires each member thereof to pay, as dues to that lodge, quarter yearly, $3.50; and section 1, article 8, of the general laws of the district, applicable to subordinate lodges, provides: "It shall be the duty of the secretary to report to the lodge at the first meeting of each month the names of all those brothers who owe for dues, fines, and assessment an amount equal to the amount of dues for one year. After the secretary has reported delinquents, he shall give legal notice to those in arrears to appear, at the latest, in the second regular meeting thereafter, and show cause why they should not be suspended. If they fail to do so, the president shall put the question: 'Does any brother know a reason why Bro. ——— shall not be suspended?' If no satisfactory reason be presented to the lodge, then the president shall declare the brother suspended." This covers the whole subject of suspensions for nonpayments of assessments for the endowment fund and dues to the subordinate lodges, and shows that suspension for these delinquencies requires action by the lodge, and prescribes the mode of such action. The statement on motion for new trial contains the following admission by defendant's attorney: "Mr. Rosenthal: We admit that there never was a formal suspension of Monroe Osterman, either from membership, or from the benefits of the widows' and orphans' fund; that he never was formally suspended. No record of Ophir Lodge shows the suspension of said Osterman for nonpayment of dues or assessments, and no notice was ever issued by or from Ophir Lodge to the defendant showing nonpayment of his dues or of his suspension." It is well-settled law that, in cases of the character of this, the only competent evidence of suspension or expulsion of a member, or that a member lacked good standing in the lodge, is some authorized resolution or act of the lodge, by which such member was expelled, suspended, or degraded: High Court etc. Order of Foresters v. Zak, 136 Ill. 185, 29 Am. St. Rep. 318, 26 N. E. 593; Medical & Surgical Soc. v. Weatherly, 75 Ala. 248; Hawkshaw v. Supreme Lodge, 29 Fed. 773.

The learned counsel for appellant concedes that "ordinarily, under such laws as those of the defendant, which do not make the nonpayment of assessments or dues, ipso facto, operate as a suspension from benefits or membership, there must be a formal suspension before the right to benefits is forfeited."

But he contends that this case is extraordinary, in that it was the duty of Osterman, as secretary of Ophir Lodge, to report all members who were delinquent in payment of dues or assessments, and that he failed to report to the lodge his own delinquency, for which he might have been suspended. In answer to this, it is enough to say that plaintiff's right to recover is not conditioned upon the performance by her husband of his duties as an officer of the lodge, nor upon his payment of dues or assessments within the periods of time limited by the laws of the lodge, for the nonpayment of which he might have been, but was not, suspended, or otherwise deprived of his good standing. In this respect this case is materially different from that of Hogins v. Supreme Council, 76 Cal. 109, 9 Am. St. Rep. 173, 18 Pac. 125, cited by appellant  In that case the defendant was a fraternity organized to promote temperance, and issued policies or certificates of insurance on the lives of its members, according to the mutual benefit system, upon their applications therefor. The rules of the order required total abstinence of its members from the use of intoxicating liquors as a beverage. In his application for insurance, Hogins agreed "that a compliance with all the laws, regulations, and requirements . . . . enacted by our said order is the express condition upon which I am to be entitled to participate in the mutual benefit life system." The certificate issued to him on such application declared, "This certificate is issued upon the express condition that said Daniel Hogins shall, in every particular, while a member of our said order, comply with all the laws, rules, and requirements thereof." The court found that Hogins had violated the agreement expressed in his application, and the laws of the order, by drinking whisky, brandy, and other alcoholic stimulants, as a beverage, and that his death was hastened thereby, but had never been suspended from the order, as he might have been, and gave judgment in favor of defendant. This court affirmed the judgment on the ground that the abstention of the insured from the use of intoxicating liquor as a beverage was made by the contract a condition precedent to defendant's liability to pay. But in the case at bar I think the contract will not bear the construction that payment of dues or assessments by Monroe Osterman, as required by the laws of the Grand Lodge or of Ophir Lodge, was a condition precedent to the liability of the Grand Lodge to pay plaintiff the

benefit of $2,000. Such a construction of numerous similar contracts has been refused, as in cases above cited, and has been given in no case more nearly similar to this than that of Hogins v. Supreme Council, supra. It is claimed that to permit plaintiff to recover in this action would violate the maxim that "no one can take advantage of his own wrong." But it is not perceived that plaintiff is seeking any advantage from her own wrong. If this maxim is applicable to her case, why would it not be equally so, even if Monroe Osterman had not been secretary of Ophir Lodge, and had merely refused to pay his dues and assessments? The subtraction of his official delinquency would only reduce the degree of the wrong. Yet this maxim has never been applied to this class of cases. Besides, it cannot be assumed that Osterman would have been suspended, or otherwise degraded from his good standing, even if he had promptly reported to the lodge his alleged delinquencies; and whether he ought to have been suspended depended upon the determination of the lodge, based upon a state of facts which may have been materially different from that proved on the trial of this case. The most that should be assumed is that he might have been suspended. No effective retroactive sentence of suspension or expulsion could have been pronounced against the deceased, Osterman, in this action. Nor does the maxim that "equity regards as done that which ought to be done" apply to this case, as counsel contends. Surely, counsel would not be understood to mean that the dues and assessments of Osterman should be regarded as paid when they ought to have been paid, but only that Osterman should be regarded as having been suspended before he died, thus assuming that he ought to have been suspended; yet, as above shown, it can be assumed only that he might have been suspended in case he had not successfully defended or excused himself, and the lodge had so determined; and such a case is not within the maxim: Pomeroy's Equity Jurisprudence, sec. 365, and notes. Besides, this maxim does not authorize a court to assume, without evidence, that a penalty for any kind of delinquency or wrong has been inflicted by any tribunal.

2. The contention that defendant paid the benefit of $2,000 to plaintiff is founded on the following facts and evidence: Twenty days after the death of Osterman, viz., on June 18, 1891, two members of Ophir Lodge—Messrs. Saalburg and

D'Ancona (Mr. Saalburg then being a trustee of Ophir Lodge) —called on the plaintiff, at her home, and informed her that, since the death of her husband, they had discovered that, as secretary of the lodge, he had in his hands at the time of his death a considerable sum of money, which he had received from members for dues, etc., the exact amount of which they did not then know. Mr. D'Ancona testified that he told her that the amount was $1,000, at least. Plaintiff testified that she understood them to say it would amount to only about $500. Omitting the further conflicting evidence as to the representations they made to her on that occasion, it appears that Mr. D'Ancona then drew, and plaintiff signed, the following instrument in writing:

"Mr. William Saalburg, Trustee Ophir Lodge, No. 21.

"You are hereby authorized to pay to Ophir Lodge, No. 21, all moneys in the hands of my late husband, Monroe Osterman, belonging to said lodge, and to deduct the same from the endowment of $2,000 which you hold for me under the laws of District Grand Lodge No. 4.

"Mrs. MONROE OSTERMAN,<br>"1527 Geary Street.

"Witness: A. D'ANCONA."

At the time this instrument was executed there was no money in the hands of Mr. Saalburg, nor in the hands of the trustees of Ophir Lodge, applicable to payment of plaintiff's endowment, though application for it had been made before that time; and about three weeks thereafter it was remitted by the Grand Lodge to the trustees of Ophir Lodge, as above stated. Without regard to the conflicting evidence as to whether the facts were truly represented to plaintiff before she signed the order, and whether she understood its purport, it is sufficient to say that it is properly admitted that the order was revocable at any time before the money was paid by Saalburg to the Ophir Lodge, plaintiff being under no obligation to make good her husband's defalcations, and there being, therefore, no consideration for the order to pay them. Yet the evidence was sufficient to justify the jury in finding that she did not understand the contents or purport of the order when she signed it. A few days after the receipt of the check of defendant, and the deposit thereof in bank, by Mr. Saalburg, as hereinbefore stated, to wit, July 13, 1891, Mr. Saal-

burg, with Mr. Marcus Levy, then secretary of Ophir Lodge, again called upon plaintiff, at San Rafael, where she then resided, and procured from her the following receipt:

"San Francisco, July 13, 1891.

"Received from District Grand Lodge No. 4, Independent Order of B'nai B'rith, and of Ophir Lodge, No. 21, Independent Order of B'nai B'rith, the sum of two thousand dollars ($2,000), in United States gold coin, in full payment of my claim against said District Grand Lodge No. 4, and said Lodge, No. 21, as the widow of the late Monroe Osterman, a member of said Ophir Lodge, No. 21, of the Independent Order of B'nai B'rith.

"————⎫
"———— ⎬ Trustees.
"————⎭

SARAH OSTERMAN,
                    Beneficiary.
WM. SAALBURG.
CHAS. GROSSLICHT.
L. LEVY.

"[Seal]       'Attest: MARCUS LEVY,
                    "Secretary."

As to the means used to procure this receipt and plaintiff's understanding of the transaction the evidence is conflicting, yet sufficient to justify the jury in finding: That Messrs. Saalburg and Levy did not inform plaintiff that the Grand Lodge had transmitted the money to the trustees of Ophir Lodge, with which to pay her benefit, but represented to her that, in order to procure that money from the Grand Lodge, it was necessary that she should sign that receipt; that, to save her trouble, they would attend to the matter for her—and that she thereupon signed the receipt without reading it, believing that they would get the money and deliver it to her. That, receiving no further communication from them, and failing to receive the money, she demanded it of the Grand Lodge. That after this demand the Grand Lodge, for the first time, professed to have discovered that Monroe Osterman was not in good standing, as a member of the widows and orphans' department, at the time of his death, and for that reason refused payment, and ordered the trustees of Ophir Lodge to return the money which it had transmitted to them as above stated. There is no evidence that Mr. Saalburg or the trustees of Ophir Lodge ever paid any part of the money to Ophir Lodge. On the contrary, Mr. Saalburg testified that, on the

expiration of his term of office as trustee, the money was still in bank, where he first deposited it; that he delivered the evidence of the deposit to his successor in office, and, for aught he knew, the deposit had not been withdrawn or changed at the time of the trial. Nor is there any evidence as to whether Ophir Lodge returned the money to the Grand Lodge in obedience to the order of the latter lodge, nor any evidence that Ophir Lodge ever claimed the money, or denied the right of defendant to demand a return thereof. If the money has not been returned, it is in the hands of defendant's agents, and therefore legally in its possession. The check for the money was sent to the secretary of Ophir Lodge, with instruction that it be paid to plaintiff "through the trustees" of that lodge. Surely, this constituted those trustees agents of defendant for that special service. It follows that the jury was fully justified in finding for the plaintiff, against the plea of payment, notwithstanding her receipt.

3. It is contended for appellant that "the court erred in charging the jury that the burden of proving the charge that the plaintiff consented that the money due upon the endowment should be applied toward the payment of the sum embezzled by Osterman was upon the defendant." This charge that plaintiff consented, etc., is a material part of affirmative new matter pleaded by defendant as a defense. The other part of the plea is that, pursuant to such consent, the money was actually applied to the payment of the sum embezzled. Of the issues thus tendered, the defendant undoubtedly held the affirmative, and, as to them, would have been defeated if no evidence had been given on either side. Therefore, as to each of those issues, the burden of proof was on the defendant (Code Civ. Proc., sec. 1891), and the court did not err in so instructing the jury.

4. The court charged the jury, in substance, that, unless they found that Osterman had been suspended by some act of the lodge, his indebtedness to the lodge for dues, assessments or money received by him, and not accounted for, constitutes no defense to the action. That this instruction was not erroneous is apparent from the foregoing considerations and authorities cited.

5. There is nothing worthy of serious additional consideration in the point that "the action has not been brought against the proper party," but that it should have been

brought against Saalburg, or Ophir Lodge, if at all. To answer this point requires only a repetition of foregoing discussion as to the liability of the defendant, it being there shown that there is no evidence that Ophir Lodge ever received, or even claimed, the money; but it is proved that the trustees of Ophir Lodge received the money as mere agents of defendant, with direction to pay it to plaintiff, and that defendant afterward ordered them to return to it, etc. It is stated and reiterated by counsel for appellant that the District Grand Lodge alone is responsible for the payment of endowments, and that subordinate lodges have no control over the endowment department of the Grand Lodge. The action of Saalburg in his endeavor to divert the money from the plaintiff to Ophir Lodge was wholly unauthorized by either the Grand Lodge or Ophir Lodge; and it effected nothing which could make him responsible to plaintiff for the payment of the money. I think the judgment and order should be affirmed.

We concur: Haynes, C.; Britt, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order are affirmed.