### ELLIS v. NATIONAL PROVIDENT UNION.

(Supreme Court, Appellate Division, First Department. April 12, 1900.)

1. BENEFICIAL ASSOCIATIONS—CERTIFICATE—COMPLAINT.
   Where a benefit certificate sued on was annexed to the complaint, which alleged that assured had fulfilled all conditions of the certificate, it was not necessary for the complaint to allege that assured was in good standing at his death; the certificate being proof of good standing at the date of issuance, which would be presumed to have continued.

2. SAME—PAYMENT—PARTICULAR FUNDS.
   Where a benefit certificate issued by a beneficial association provided that the beneficiary should be paid out of the "provident fund," it was not necessary, in an action on such certificate, to allege that there was a provident fund out of which the claim could be paid.

3. SAME—FORFEITURE—ASSESSMENT—NONPAYMENT—NOTICE—TRIAL—DIRECTION OF VERDICT.
   The by-laws of a beneficial association required notice of an assessment to be given each member, on a prescribed form. At a meeting of assured's local council, a resolution was adopted authorizing members to be notified of the levy of the assessment by publication of notice in the order's official paper, a copy of which was required to be mailed to each member. Held, that where it did not appear that notice of an assessment had been given assured, either in accordance with the laws of the association, or that a copy of the paper containing such notice had been mailed to him, the association had no power to forfeit the certificate for nonpayment of such assessment, and hence a verdict in an action on the certificate was properly directed for plaintiff.

4. SAME—HARMLESS ERROR.
   Where, under the issues, the court was authorized to direct a verdict for plaintiff, the erroneous admission of evidence was harmless.

Appeal from trial term, New York county.

Action by Charles M. Ellis against the National Provident Union. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Raphael J. Moses, for appellant.
Frank Herwig, for respondent.

PATTERSON, J. The defendant is a society incorporated under the laws of the state of New York; the chief feature of the corporate business being that of a mutual benefit association, which issues to its members certificates in the nature of life insurance policies. In the year 1883 it issued to George S. Ellis a certificate, called a "bond," of the character mentioned, which constitutes a direct contract between it and the assured and the beneficiary named therein. The defendant appears to be a central organization, with branches in various localities; such branches being called "councils," one of

which was the United States Council, No. 1, located at Brooklyn, N. Y. Membership of a council is a prerequisite to the right to a certificate. That issued to George S. Ellis recites that it was issued upon evidence that he was a member of United States Council, No. 1, and upon condition that he "complies with the laws, rules, and regulations now governing this union, or which may hereafter be enacted for its government, and is in good standing at the time of his death." It provides further as follows:

"That the said National Provident Union hereby agrees to pay out of the provident fund to his wife, Eliza A. Ellis, the sum of $2,000, in accordance with and under the laws and limitations governing this union, upon satisfactory evidence of the death of said Ellis, and the cancellation of this bond, and of the surrender of this coupon receipt, properly executed: provided, this bond shall at that time be in force, not forfeited, surrendered, or canceled."

George S. Ellis died in February, 1897. Eliza A. Ellis, the beneficiary named in the certificate or bond, assigned her right therein to the plaintiff, who brought this action to recover the sum of $2,000. The allegations of the complaint are the incorporation of the defendant, the issuance of the certificate or bond, the death of George S. Ellis, the assignment of the beneficiary's right to the plaintiff, the giving of proof of the death of George S. Ellis, the tender made of the cancellation of the bond and the surrender of the coupon receipt, a demand of the amount of the bond, and a refusal to comply with the demand, and that George S. Ellis, Eliza A. Ellis, and the plaintiff duly fulfilled all the conditions of the bond on their part to be fulfilled, and that no part of the sum has been paid. The answer consists of admissions and denials; the latter being of the promise to pay to Eliza A. Ellis the sum of $2,000 upon the death of George S. Ellis, of the assignment of the claim under the certificate or bond, of proof of the death of George S. Ellis, of the furnishing proof of such death to the defendant, and of a tender made for the cancellation of the bond and the surrender of the coupon, and of the demand. There is no affirmative defense set up. Upon the trial a verdict was directed for the plaintiff, and from the judgment entered on such verdict this appeal is taken.

The first ground upon which a reversal of the judgment is asked is the alleged insufficiency of the complaint. At the beginning of the trial a motion was made to dismiss the action because the complaint did not contain an allegation that George S. Ellis at the time of his death was in good standing; and, secondly, it did not contain an allegation that there was any "provident fund" out of which the claim asserted by the plaintiff could be paid. Neither of these allegations was necessary. A copy of the certificate or policy or bond was annexed to the complaint, and the issuance of that certificate and its possession by the plaintiff were sufficient. There is an allegation in the complaint that the assured, the beneficiary, and the plaintiff had fulfilled all the provisions "of the bond and insurance" on their part to be fulfilled. The certificate was in itself proof of the good standing of George S. Ellis when it was issued, and it will be presumed that such good standing continued, until the contrary is shown. We think that it was incumbent upon the

defendant to prove that the status of the member was changed, or that he failed to comply with the regulations and requirements of the society in such a way as to forfeit his policy, or the rights of ·the beneficiary under it. Nor was it necessary, under the form of this policy or certificate, that the plaintiff should allege that there was a provident fund applicable to the payment of the claim under this certificate. There was a contract to pay out of a provident fund, and the beneficiary was entitled to rely in the first instance upon provision having been made by the society to perform its contract, or that provision would be made; and, if there were no fund out of which the insurance could be paid (assuming that would constitute a defense), it was incumbent upon the defendant to show the condition of its finances and the want of means.

The course pursued at the trial was such as to allow the defendant to show, if it could, that George S. Ellis was not in good standing in the defendant organization at the time of his death. The record before us is confused, but an attempt was made to· prove that the insured was suspended because of his failure to· pay certain assessments duly levied, and which were required to be paid by him in order to keep the insurance effected by his certificate alive. The constitution and by-laws of the defendant provide that, whenever a member of a council is suspended, his rights under his certificate shall cease or abate until he is properly restored or reinstated within a specified period; and it was claimed that documentary evidence furnished to the defendant by the United States Council, No. 1, established the fact that George S. Ellis had been suspended in December, 1894, for the nonpayment of a tax or charge due upon his policy in December of that year. It is not to be controverted that if he were duly and properly suspended, and not reinstated, a claim under this policy is not enforceable; but, upon this record, it is not clearly proven that the George S. Ellis· named in the policy sued on was ever suspended. A report seems to have been made by the United States Council to the defendant society on the 16th of December, 1894, in which it is stated that "George S. Ellis," bearing the roll No. 19, and aged 35, was suspended. The George S. Ellis named in the certificate had the number 22, and was of a different age from that of the person reported as suspended. The identity of the assured in the certificate No. 22 with the suspended person is not positively shown; but, apart from that, the real question in the case is whether, assuming that the assured in the certificate No. 22 is the same person as the George S. Ellis suspended in December, 1894, that suspension was lawful. The evidence relied upon as to the suspension is that contained in the report of the council above referred to, from which it appears that such suspension resulted from the nonpayment of a tax for the benefit of the provident fund. Under what are called the laws of the association, a "provident fund" was constituted, and it is provided that every member (called a "citizen") of the grade to which George S. Ellis belonged should pay to the proper officer a provident tax or assessment, which should be used only for the provident fund. The tax was fixed at a certain rate for members of a specified age. The amounts collected on

this tax call or assessment were to constitute a mortuary fund. Whenever it became necessary to make a call, it was the duty of the secretary of the defendant to notify every council to forward immediately to the treasurer of the defendant the amount due from every member of the council liable to contribute under the call, and such calls were to be uniformly made on the 2d and 16th days of each month of the year, although extra calls might be made when necessary. When a council was notified by the secretary of the defendant that a call had been made, it became the duty of the collector of that council at once to notify every member liable to such call. Section 11 of law 2, relating to the provident fund, provides that, a council having been notified by the secretary of the union that a call has been made, it shall be the duty of the collector at once to notify every citizen liable to such call. "The notice shall bear the official stamp of the collector, or the seal of the council," and shall be in accordance with a prescribed form. "Each citizen shall pay the amount due, on the notice of the collector, within thirty days from the date of such notice, and any citizen failing to pay such call within thirty days shall be suspended from all provident benefits." This section is relied on to defeat the plaintiff's claim. Before the policy could be forfeited for the nonpayment of the tax call or assessment in 1894, or any subsequent time, it was necessary that Ellis should be duly notified of such call having been made. It is not for the plaintiff to prove, under the allegation of the complaint, that all calls or premiums were paid. What was said by the general term of the supreme court in Elmer v. Association (Sup.) 19 N. Y. Supp. 289, on that subject, applies here. The nonpayment of calls or premiums must be established by the defendant, and it must prove that notice or demand was given to the member.

It is contended that the proof shows that notice was given, in a manner binding upon the member; that at a meeting of the council the provision respecting the notification under the requirements of section 11 was superseded by a resolution which authorized the members or citizens of the council to be notified of the levying of an assessment or tax call by the publication in a newspaper called the "Cube." Without inquiring as to the authority of the council to adopt a resolution radically changing the method of notification required by the laws of the defendant, it is sufficient to say that there is no evidence that the terms of the resolution were complied with, in the way of giving notice to George S. Ellis. That resolution authorized the publication of notice of tax calls in the newspaper, as the official organ of the council, but there was a requirement that a copy be mailed to each member in good standing. There is nothing whatever in this record to show that a copy of this official newspaper was ever mailed or sent to George S. Ellis, and no presumption can be indulged in that any such notice was given. To sum it up in a few words, the claim of the defendant is that the policy was forfeited by a nonpayment of the tax call or assessment. Before that forfeiture could accrue, it was necessary that notice of the call should be given to George S. Ellis. There is no proof that any such notice was given, either in accordance with the provi-

sion of section 11, or of the substituted method by newspaper publication.

Various exceptions were taken to rulings upon evidence during the progress of the trial. There is but one which requires consideration, and that is that the plaintiff was allowed to prove that it appeared upon the roll book of membership of the United States Council, No. 1, that George S. Ellis was a member in good standing at the time of his death. A subpœna to produce that book had been issued, but it was not actually in court. The defendant's counsel expressly stated that he objected to the testimony in relation to the contents of the book, but not because the book itself was not in court. The witness testified that he had twice examined the book in the presence of the attorney and counsel for the defendant. He also testified that he had had a conversation with the secretary of the United States Council, No. 1, and that the secretary had told him that he had testified on a former trial that the roll book was kept in the ordinary, regular, and correct manner. That was objected to as hearsay testimony; the counsel for the defendant saying, "I object to his [the witness] stating what Mr. Sangster testified to, without reading the testimony." Then an exception was taken, but the witness proceeded to read from the testimony of Mr. Sangster given on a former trial. This seems to meet the only ground of the objection. From what Sangster testified to on the former trial, it would appear that the condition of the book was such as to show that George S. Ellis (No. 22) never had been placed under disability, or, in other words, that the suspension of a George S. Ellis did not relate to the person to whom the certificate No. 22 was issued. This evidence, strictly considered, may not have been competent, but the record is so indefinite that it is difficult to determine whether counsel for the defendant acquiesced in its admission or not. However, it does not affect the result of the trial. The failure of the defendant to show that George S. Ellis was lawfully suspended was enough to authorize the court to direct the verdict.

The judgment appealed from must be affirmed, with costs. All concur.