IOWA DRUG COMPANY v. WEBB SOUERS, Appellant.

**Corporations:** AGREEMENT TO PURCHASE PROPERTY: RECORD EVIDENCE. 1 The resolution of a corporation to the effect that the company requires a manager; that its president is the only available person for the position and is willing to accept provided he can dispose of his private business; that in case he is so employed and does not sell his business to another the company will purchase the same at a specified sum at any time within a given date, is binding upon the corporation in case of acceptance by the manager; and to complete a sale of the busi-

ness and transfer title to the property it is not necessary for the corporation records to show acceptance by it of his business and property.

**Same:** PROOF OF AGREEMENT BY PAROL: EVIDENCE. Parol evidence is admissible to show that formal action was in fact taken by a corporation respecting a matter, although no record exists in the minutes of its meetings; and in the instant case the evidence is held sufficient to show that the plaintiff corporation affirmed its contract of purchase of defendant's business, stock and fixtures, after he had accepted its proposition of employment as manager and the purchase of his business.

**Corporations:** CONTRACTS: RESCISSION: *ultra vires.* A corporation organized to engage in the wholesale drug business and to handle and sell drugs, medicines and such other goods as are incident to the business, to buy, hold and sell real estate and such personal property as it may deem advisable, has authority to buy a retail stock of goods and fixtures with a view of adding the same to its wholesale stock; and where it has in good faith consummated a purchase and the business of the seller has been destroyed in consequence it cannot rescind the contract on the ground that it was *ultra vires.*

**Same:** DEALINGS BETWEEN STOCKHOLDERS AND CORPORATION: TRUST RELATION. One who in good faith disposes of his property to a corporation at an agreed price for stock in the concern for the purpose of putting himself in a position, at the request of the corporation, to accept the management of the concern does not occupy a position of trust or confidence, although a promoter and officer of the company: and a transfer of the stock to him according to the agreement cannot be annulled by the corporation though disadvantageous to it.

*Appeal from Polk District Court.*— HON. A. H. McVEY, Judge.

THURSDAY, JULY 9, 1908.

ACTION in equity to cancel shares of stock held by the defendant in the plaintiff company. Decree for plaintiff. Defendant appeals. There is also an appeal by plaintiff on the ground that the decree entered in its favor does not give to it the full measure of the relief to which it is entitled. The defendant, having first appealed, will be treated as ap-

pellant.— *Affirmed* on plaintiff's and *reversed* on defendant's appeal.

*Read & Read,* for appellant.

*Wm. B. Brown,* for appellee.

McCLAIN, J.— In February or March, 1903, the defendant associated with himself a few other persons in promoting the organization of a wholesale drug company to carry on business in Des Moines, which, as subsequently legally organized, became the plaintiff company. On August 26th following there was a meeting of the board of directors, of the plaintiff company, then duly organized, at which defendant, as president, and directors Brown, Wilcoxen, and Steelsmith were present. At this meeting there were some resignations of officers and directors, and the vacancies thus created were filled, so that from this date until March 13, 1905, the persons above-named and Connell and Rawson constituted the board, the officers of the board being the defendant, president and treasurer, Rawson, vice-president and Connell, secretary. The defendant had been for many years engaged in the retail drug business in Des Moines, and, at the date of the meeting of directors above referred to, owned and was conducting a retail drug store. On August 27, 1903, at an adjourned meeting of the board of directors at which all the officers and directors were present, a resolution was passed and duly recorded, reciting that, as the affairs of the company required the immediate personal attention of at least one person at that time, and the conditions were such that no one but the president of the company was available for this purpose, and the defendant, as president of the company, was willing to assume immediate personal charge of its business provided he could dispose of or make some personal arrangement in regard to his retail business, he was employed as manager, to act in such capacity from and after the 10th day of September, 1903, until the

company was ready for business, at a compensation of $250 per month, on condition that he give his whole time and undivided attention to the business; and that, in case he did not sell and dispose of his retail business to any other person, the company purchase his stock, fixtures, and business for the sum of $9,000, at any time on or before December 1, 1903, with the further recital that " the invoice price of said stock and fixtures is about $11,850." The record further recites that defendant accepted such employment, and would engage some person to manage his retail business until he could dispose of it, or the company saw fit to purchase at the price named, which amount he would be willing to accept if sold to the company. At the next meeting of the directors, on October 2, 1903, at which all the officers and directors, except director Brown, were present, by-laws were adopted fixing the duties of officers, and defendant was unanimously elected manager, Rawson assistant manager, and Connell credit man and head bookkeeper, and contracts with these persons for employment for definite periods, at fixed salaries, were provided for; it being expressly recited that, whereas defendant " has been elected business manager, and as heretofore on resolution of this board has been devoting his time and attention to the business of the company at the compensation fixed at $250 per month, therefore be it resolved that said employment, at the salary of $250 per month, be discontinued on the 31st day of December, 1903. That the president and secretary of this company be and are hereby authorized and directed that in case said Webb Souers shall purchase and pay for capital stock of this company in the amount of $14,000, and shall agree to devote his entire time and attention to the business of this company, as provided in the by-laws, to enter into a written contract with said Webb Souers as business manager for a period of five years from and after January 1, 1904, at a compensation of $3,500 per annum, payable monthly, and upon such other terms and conditions as may be mutually agreed upon for the best in-

terests of the company." At the next meeting of the board, held on October 8, 1903, at which all the members of the board except Steelsmith were present, the minutes of the previous meeting were read and approved, and the board approved a contract submitted, with defendant as general manager. It appears otherwise without controversy that the defendant subscribed and received certificates for $15,000 of the stock of the company, and paid therefor $6,000 in cash, with the understanding that the balance of his stock was fully paid for by the sale to the company of his retail business, including the stock and fixtures, at $9,000.

The plaintiff seeks in this action to have canceled defendant's stock in the company to the extent of $7,367.62 as unpaid for, the contention being that the sale of defendant's retail business, including the stock and fixtures, to the plaintiff company had never been consummated. The lower court found that, although defendant had turned over to the plaintiff company in payment of his stock, in addition to the $6,000 paid in cash, the further sum of about $3,000 as the proceeds of the sale by him of his stock of fixtures, and had delivered to plaintiff unsold portions of said stock, the value of the stock so turned over fell short by $3,000 in value of the balance of his subscription, and ordered the cancellation of $3,000 in value of the stock in plaintiff company held by him. On defendant's appeal it is contended that defendant's stock was fully paid for, and that the court erred in canceling any portion thereof; while on plaintiff's appeal it is contended that the court should have canceled $9,000 of value of the stock held by defendant, upon the return by plaintiff to defendant of the proceeds of defendant's retail stock, so far as the same should be found to have been received by plaintiff, and such portions of such retail stock as still remained in plaintiff's custody or possession. It is apparent that the controversy between the parties relates to the fact as to whether defendant's retail business, including the stock and fixtures, was sold to the plaintiff for $9,000, and whether,

if not sold to plaintiff for cash, it was exchanged in payment for $9,000 stock subscription to the plaintiff, and being of less value than that at which it was thus exchanged, plaintiff is entitled to have the entire subscription for $9,000 in stock canceled, or to have an amount of stock canceled corresponding to the shortage in value of the retail business, including the stock and fixtures which had been transferred or attempted to be transferred, to the plaintiff in exchange for stock in the plaintiff company. The principal contention for appellant is that no sale of defendant's retail business, including stock and fixtures, was ever made to the plaintiff company, and if such sale was in fact attempted to be made through the action of plaintiff's board of directors, such sale was *ultra vires* and void.

It is conceded that the recorded resolution of August 27th did not effect a consummated sale, for it remained optional with the defendant to turn over his retail business to 1. CORPORATIONS: the company, or to dispose of it as his own agreement to purchase property if he should see fit. But we think property: record evidence. that the resolution bound the plaintiff company to accept defendant's retail business at any time before December 1st if the defendant should elect to dispose of it to the company at that agreed price, and that, if defendant did so elect, and advise the directors of such election, then the defendant's retail business became the property of plaintiff company, unless the transaction was invalid for want of authority on the part of the board of directors to consummate such a contract of sale. It is conceded that the records of the board of directors do not show the acceptance by the company of defendant's retail business in pursuance of the resolution of August 27th. But this we think was not necessary in order to establish the fact of a consummated sale under such resolution. Defendant had the option to turn over his retail business to the plaintiff company at the agreed price, if he should elect to do so, within the proper time, and all that was necessary to complete a sale and transfer the title

to the property was the communication to the board of directors of his acceptance of its proposition.

The evidence shows conclusively, if parol evidence is admissible for that purpose, that on October 2d, before adopting the resolution authorizing the employment of defendant

2. SAME: proof of agreement by parol: evidence.

as general manager for a term of years at a fixed salary, on condition that he should purchase and pay for capital stock in the company to the amount of $14,000 and agree to devote his entire time and attention to the business of the company, defendant had indicated to the directors of the company present at that meeting his acceptance of the proposition for the sale, to the plaintiff company, of his retail business, in order that he might devote his entire attention to the business of the company. If there was any necessity for formal action by the board of directors affirming the sale to the company of the defendant's retail business after he had unequivocally accepted the proposition, then we have to say that the evidence shows that such action was, in fact, taken at that meeting, and not made of record. It is well settled that parol evidence is admissible to show formal action of a board of directors to have been in fact taken, although no record thereof is found in the minutes of its meetings. *Selley v. American Lubricator Co.,* 119 Iowa, 591. No doubt, as has been said in *Hawkshaw v. Supreme Lodge,* (C. C.) 29 Fed. 770, proof of this kind must be so convincing and satisfactory as to leave no doubt that the matter attempted to be interpolated into the records of the proceedings of the corporate body actually occurred. But the testimony of all the directors, save Connell, who was deceased before the trial of the case, and Rawson, confirms the contention of defendant that such action was had, and this testimony is entirely consistent with and is in fact supported by the record as to what was actually done; for it appears that defendant agreed to give his entire time to the business of the company, and it is shown without controversy, by the records and otherwise, that he had made

the disposal of his retail business a necessary condition of his undertaking to render such exclusive services.   Rawson contradicts any such arrangement at the meeting of October 2d, but his contradiction is based upon the failure of the minutes to show the fact, and he admits that during October or November the matter was talked over in the store, and the defendant seemed to think the sale to the plaintiff had been completed.   The subsequent sale of the retail business to one Hoover, apparently made by defendant in his own interest, the insurance of the stock in his name, and the subsequent foreclosure by him of a chattel mortgage for a portion of the purchase price, are explained by an arrangement, testified to by all the directors except Rawson, that defendant should thus act, apparently in his own name, though in fact as trustee for plaintiff, in order that the opposition of other dealers, with whom the plaintiff company expected to do business, might be averted.

If the sale of the retail business by defendant to plaintiff was in fact consummated as provided for in the resolution of August 27th, then the only question left for determination is whether plaintiff can avoid the transaction on the ground of want of authority of its board of directors to purchase defendant's retail business.   The general nature of the business to be transacted by plaintiff is described in its articles to be "the wholesale drug business as it is usually conducted; to purchase, handle, and sell drugs, medicines, patent medicines, chemicals, druggists' sundries, surgical instruments, and such other lines of merchandise as may be determined by the board of directors or the managing officers."   It is further provided that "said corporation may also purchase, hold, and convey real estate, and other personal property as may be deemed advisable, in the conduct of said business." Under this authority the board could undoubtedly buy a stock of drugs and also druggists' fixtures.   Whether they could buy a retail drug business as such, and continue to

3. CORPORATIONS:
contracts:
rescission:
*ultra vires.*

conduct it as a business may be more doubtful; but there is nothing in the resolution of August 27th necessarily involving the carrying on of this retail business by the plaintiff company after its sale to plaintiff. If the board of directors, for the purpose of securing the exclusive services of defendant, saw fit to purchase his retail business with a view of adding the stock to its wholesale stock, and disposing of the fixtures as such, it was perfectly competent to do so, even though such transaction involved some loss in value. But in any event plaintiff is not in a situation to insist that the action of its board was *ultra vires*. The power which the board attempted to exercise was not contrary to law or public policy, and a corporation cannot rely upon the want of authority of its board to defeat a consummated transaction of which it has accepted and retained the benefit. *Watts v. Equitable Mutual Life Ass'n*, 111 Iowa, 90; *Fidelity Ins. Co. v. German Savings Bank*, 127 Iowa, 591. It would be most inequitable for the court to hold that the plaintiff could rescind the transaction, on the ground of *ultra vires*, after the value of defendant's retail business had been destroyed in consequence of the express request of plaintiff's board of directors in order to secure for itself the value of defendant's exclusive services.

We agree with the trial court in holding that there was no actual or intentional fraud committed by defendant in selling his retail business to plaintiff at the agreed value of 4. SAME: deal- $9,000. The relief asked by plaintiff is not ings between stockholders the rescission of the sale on the ground of and corpora- tion: trust fraud, but the cancellation of so much in relation. value of stock held by defendant as exceeds the value of the property received in exchange therefor. After defendant's retail business had been destroyed, the plaintiff could not put him *in statu quo* by tendering back the proceeds actually received by it from the appropriation of such business. Had defendant been guilty of actual and intentional fraud, the inability of plaintiff to put him *in statu quo* would not de-

feat its right to relief, but, as already said, actual fraud was not shown.   The evidence tends to show that the stock and fixtures were not of the value of $11,850, which he represented to be the invoice price, but it does not appear that they had not been fairly invoiced, as substantially of that value, for the purpose of a retail business.   The erroneous theory of the trial court seems to have been that where stock is issued in consideration of the transfer to the company of property of less real value than that at which it is taken, the transaction is fraudulent in law as to the corporation.   The rule adopted by the court is based on the so-called " trust fund " doctrine, in accordance with which a stockholder, seeking to escape personal liability to creditors on the ground that his stock has been fully paid for, must show that he has in good faith invested in the enterprise the value of the stock received by him, either in money or its equivalent.   But this doctrine has no application as between the corporation itself and the stockholder, who has received his stock in exchange for property surrendered at an agreed valuation.   *State Trust Co. v. Turner,* 111 Iowa, 664; *Esgen v. Smith,* 113 Iowa, 25. In the transaction between the corporation and the stockholder the latter does not occupy any position of trust or confidence, although he may be a promoter or officer of the company, and in the absence of actual fraud the transaction is to be upheld, although it may subsequently prove to have been disadvantageous to the corporation.   *Scovill v. Thayer,* 105 U. S. 143 (26 L. Ed. 968) ; *Bank of Ft. Madison v. Alden,* 129 U. S. 372 (9 Sup. Ct. 332, 32 L. Ed. 725).

The cases relied upon by the trial judge in reaching his conclusion, and now insisted upon for appellee as supporting such conclusion, are not in point.   In *Hallam v. Indianola Hotel Co.,* 56 Iowa, 178, it was held that a director owed to the corporation the duty of dealing in good faith with reference to the corporate property in the enforcement of a claim by him as creditor against the corporation, and for his bad faith in buying the corporate property at much less

than its real value, the sale to him was set aside. In *Hinkley v. Sac Oil & Pipe Line Co.,* 132 Iowa, 396, a stockholder was allowed to have his stock canceled on account of fraudulent representations of the promoters as to the value of the business in which he had been induced to invest. Other cases relied on for appellee are equally inapplicable. In *Camden v. Stuart,* 144 U. S. 104 (12 Sup. Ct. 585, 36 L. Ed. 363); *Coit v. Gold Amalgamating Co.,* 119 U. S. 343 (7 Sup. Ct. 231, 30 L. R. A. 420), and *Coleman v. Howe,* 154 Ill. 458 (39 N. E. 725, 45 Am. St. Rep. 133), the controversy was between creditors and stockholders, and the holdings simply were that, as against creditors, the stockholder cannot escape liability by showing payment for his stock in property grossly overvalued. This is not a controversy between creditors of the plaintiff corporation and defendant as a stockholder, nor between stockholders, who have been induced to purchase in the belief that the stock of the company had been fully paid for in cash, and the corporation itself, with a view to the cancellation of the stock thus purchased. If the stockholders who became such after the transaction between the plaintiff and defendant was consummated desire to have their stock in the plaintiff company canceled, and the consideration paid therefor returned, their grievances should be made the basis of an independent action by them against the corporation, or perhaps against the promoters or officers of the company who, by fraudulent misrepresentations, have induced such stockholders to invest their money. The plaintiff is not insolvent, and is a going concern, and, as a corporation competent to make contracts for the issuance of stock and to act through a duly selected board of directors, it cannot complain of a transaction entered into in good faith, although, as the result of such transaction, it has not received full value in money for stock lawfully issued. Counsel for appellee insists that the action is for the benefit of the stockholders of the plaintiff company, but this is true

only in the sense that any action of the corporation is presumably for the benefit of its stockholders. The stockholders themselves are not parties to the suit, and as such they make no complaint, nor is the action one in which any relief to the stockholders, as distinct in interest from the corporation, is asked.

The trial court erred in decreeing a cancellation of any portion of the stock of defendant, and on defendant's appeal the decree is reversed. It follows that there was no error of which the plaintiff can complain. The result is that the decree is affirmed on plaintiff's appeal, and on defendant's appeal it is *reversed.*

Bishop, J., takes no part.