KELLOGG–MACKAY CO. v. HAVRE HOTEL CO. et al.†

(Circuit Court of Appeals, Ninth Circuit. October 7, 1912.)

No. 2,048.

1. GUARANTY (§ 30*)—LIABILITY.
     Where the president and secretary of a corporation signed a guaranty of a contractor's liability for supplies solely in their official and not in their individual capacity, they could not be made individually liable thereon.
     [Ed. Note.—For other cases, see Guaranty, Cent. Dig. §§ 30–32; Dec. Dig. § 30.*]

2. GUARANTY (§ 21*)—ESTOPPEL.
     A partnership and the members thereof were not estopped to deny liability on a guaranty for the payment of supplies furnished to a contractor by reason of a letter written to the seller of the supplies several months after they had been furnished to the contractor.
     [Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 23; Dec. Dig. § 21.*]

3. CORPORATIONS (§ 484*)—POWERS—GUARANTY.
     Under Rev. Codes Mont. § 3889, providing that corporations organized thereunder shall have power to enter into any obligations or contracts essential to the transaction of their ordinary affairs, or for the purposes of the corporation, and section 3890, declaring that no corporation shall possess any corporate powers, except such as are necessary to the powers so enumerated, a mercantile corporation has no power to guarantee the obligations of others.
     [Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1815; Dec. Dig. § 484.*]

4. CORPORATIONS (§ 388*)—POWERS—ULTRA VIRES—APPLICATION OF DOCTRINE.
     The doctrine of ultra vires may not be invoked to defeat justice or work a legal wrong.
     [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1556–1567; Dec. Dig. § 388.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† Rehearing denied November 1, 1912.

5. CORPORATIONS (§ 388*)—GUARANTY—ULTRA VIRES—ESTOPPEL.

A private corporation engaged in constructing a hotel building, having contracted with B. to furnish and put in plumbing appliances, transmitted to plaintiff, to whom B. had applied for supplies, a letter, signed by the hotel company's president and secretary, informing plaintiff that B. had been awarded the contract for plumbing and heating the hotel, that he had placed his order for material with plaintiff on terms that he was to pay 60 per cent. of bills on delivery and balance in 60 days, and stating that the writers were prepared to meet such terms with B., so that plaintiff would be perfectly safe in shipping material to him. Plaintiff furnished the materials on the strength of the letter, and B. failed to make the payments as agreed. *Held* that, the hotel company having received the benefits of the materials furnished by plaintiff on the faith of the guaranty that the price should be paid by B., and being in a position to protect itself by withholding from B. sufficient to pay plaintiff's demand, it was estopped, when sued on the guaranty, to claim that it was ultra vires.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1556–1567; Dec. Dig. § 388.*]

In Error to the Circuit Court of the United States for the District of Montana.

Action by the Kellogg-Mackay Company, a corporation, against the Havre Hotel Company and others. Judgment for defendants, and plaintiff brings error. Reversed as to Havre Hotel Company, and affirmed as to the other defendants.

The complaint contains the usual allegations of the incorporation of the Havre Hotel Company, of the Broadwater-Pepin Company, and of the copartnership of Simon Pepin and E. T. Broadwater; the defendants E. T. Broadwater and E. C. Carruth being sued in their individual capacity. It is further alleged that prior to November 7, 1904, the Havre Hotel Company entered into a contract with one P. H. Brader, whereby Brader agreed to furnish the labor and materials for the installment of a heating plant and necessary plumbing and other pipe fitting in a certain building then in course of construction, known as the Havre Hotel; that shortly afterwards Brader placed an order with the plaintiff, at Minneapolis, Minn., for the necessary materials, supplies, and fixtures to be used by him in carrying out his contract with the Hotel Company; that on the 7th day of November, 1904, the defendants, Havre Hotel Company, a corporation, Broadwater-Pepin Company, a corporation, Broadwater-Pepin Company, a copartnership, E. T. Broadwater, and E. C. Carruth, for a valuable consideration, made, executed, and delivered to the plaintiff a certain writing offering or proposing to guarantee the payment by Brader for the materials so ordered when furnished, as follows:

"Havre, Montana, Nov. 7th, 1904.

"Kellogg-Mackay-Cameron Co., Minneapolis, Minn.—Gentlemen: Mr. P. H. Brader, of this place, was awarded the contract for plumbing and heating the new Hotel Havre, which is under construction here now, and informs us that he has placed the order for material for this work with your firm, on terms that he is to pay you 60% of your bills when material is on the ground here (less freight) and balance in 60 days. We are prepared to meet these terms with Mr. Brader, so that you will be perfectly safe in shipping him this material."

It is then further alleged that on the 9th of November, 1904, the plaintiff duly accepted said offer in writing, as follows: "Your communication of the 7th instant guaranteeing the account of P. H. Brader for the material which we are to ship him for the new Hotel Havre, and stating terms of payment on same, received. The same is satisfactory to us"—said acceptance being delivered to the defendants at Havre, Mont., about November 11th; that after the receipt of such acceptance by the defendants, they, and each of them,

remained silent, and intentionally refused to notify plaintiff of the receipt of such acceptance; that, by such silence and failure to notify the plaintiff, defendants, and each of them, are estopped to deny that the proposal of November 7, 1904, and the acceptance thereof of November 9, 1904, did not create between the said defendants and plaintiff a contract of guaranty of the account of the said Brader; that the plaintiff, being deceived and misled by the silence of the defendants, furnished the material to Brader; and that the defendants by their silence and failure to notify, misled and deceived plaintiff into providing said materials, and are thereby estopped to now deny that the said proposal of guaranty and the said acceptance thereof did not create between them, the defendants and the plaintiff, a contract of guaranty. Other matter is shown, but is not material here.

The answer states, in effect, that on or about the 7th day of November, 1904, E. T. Broadwater, as president, and E. C. Carruth, as secretary and treasurer, wrote and signed the letter to plaintiff, as set forth in the complaint; that said Broadwater and Carruth were president and secretary and treasurer, respectively, of the Havre Hotel Company, but that they had no authority from the board of trustees or stockholders of the Havre Hotel Company in any way or manner to bind the said Hotel Company as guarantor of the account of P. H. Brader, by proposing to guarantee the same, or otherwise; that none of the defendants signed said letter, or ratified it, in any way or manner, or made any proposal or guaranty of said account of said Brader, or guaranteed the same.

By an amended reply the plaintiff alleges that the supposed guaranty of November 7, 1904, was written upon the letter head of Broadwater-Pepin Company and in the handwriting of E. T. Broadwater, one of the signers of the letter; that E. T. Broadwater was then, and for a long time prior thereto had been, the manager for said Broadwater-Pepin Company, and one of its officers; that the plaintiff believed in good faith that the letter was that of the Broadwater-Pepin Company, and acting upon that belief wrote the letter of November 9th, as set forth in the third amended complaint, and then reiterates the allegation that the defendant Broadwater-Pepin Company remained silent after the receipt of the letter of November 7th, for which reason it became estopped from denying that the guaranty was binding upon it.

It was shown at the trial that the plaintiff, Kellogg-Mackay Company, is the successor to the Kellogg-Mackay-Cameron Company. John H. Finnegan, the traveling agent of Kellogg-Mackay-Cameron Company, solicited from Brader the order for the materials in question. He says, among other things, that Broadwater had the care of the business of the Broadwater-Pepin Company, that he (Finnegan) had business dealings with both Mr. Broadwater and Mr. Carruth in connection with the order placed for the materials for the hotel, and that he received a letter in an envelope from Carruth, which he took to be a guaranty for the payment of the goods. This letter he forwarded to Kellogg-Mackay-Cameron Company at Minneapolis, together with the order for the material. The letter is as follows:

"Broadwater-Pepin Co., General Merchants.

"Havre, Montana, Nov. 7th, 1904.

"Kellogg. Mackay-Cameron Co., Minneapolis, Minn.—Gentlemen: Mr. P. H. Brader, of this place, was awarded the contract for plumbing and heating the new Hotel Havre, which is under construction here now, and informs us that he has placed the order for material for this work with your firm, on terms that he is to pay you 60% of your bills when material is on the ground here (less freight) and balance in 60 days. We are prepared to meet these terms with Mr. Brader, so that you will be perfectly safe in shipping him this material.

"Respty., E. T. Broadwater, Pres.

"E. C. Carruth, Secty. & Treas."

He later states that he believed the financial standing of Brader was not good, but that the Broadwater-Pepin Company was responsible.

Dan Donovan, the manager of the business at Minneapolis, testified that he received the order for the material in question, together with the supposed

guaranty, and that he wrote Broadwater-Pepin Company, Havre, Mont., on November 9, 1904, as follows:

"Gentlemen: Your communication of the 7th inst., guaranteeing the account of P. H. Brader for the material which we are to ship him for the new Hotel Havre, and stating terms of payment on same received. The same is satisfactory to us. We would also state to you that we have already shipped to Mr. Brader on open account material to even considerable more value than this. We appreciate the guaranty, but would not have insisted upon it from Mr. Brader, as we know that Brader is honest, although poor. Hoping that the material which we delivered to Mr. Brader for you will be satisfactory, and that he will do you a first-class job, we are,

"Yours truly,                              Kellogg-Mackay-Cameron Co.,
                                                    "Dan Donovan. Mgr."

He also testified, among other things, that he knew of Broadwater-Pepin Company through mercantile reports, and also knew they were the owners of the Hotel Havre, in which the material was to be installed by Brader; that the material consigned to Brader was all used in the hotel; and that no payments had been made upon the account. Other correspondence between the parties is also shown by this witness, to wit:

A letter written by Kellogg-Mackay-Cameron Company to Broadwater-Pepin Company on March 30, 1905, which reads as follows:

"Gentlemen: On November 7th, 1904, you wrote us giving us the terms of payment you had made with P. H. Brader for heating and plumbing your hotel, and guaranteeing payment to us for all the material we were to deliver to Mr. Brader for that hotel according to the terms mentioned in your letter of the 7th. Although we have repeatedly requested Mr. Brader to forward us the 60% of the amount of our invoices, and have recently asked him to pay the bill in full, as it is all past due according to our arrangement with you and Mr. Brader previous to the time of delivery of the material, still up to the present writing we have not received one cent from Mr. Brader on account of all that material. We would therefore ask that you make your guaranty good and send us your check for the amount Mr. Brader owes us for our material used in your hotel.

"Yours truly,                              Kellogg-Mackay-Cameron Co.,
                                                    "Dan Donovan, Mgr."

And a letter in reply, of date April 3, 1905, reading as follows:

"Carnal & Carruth, Real Estate, Loans, Collections.

                                          "Havre, Montana, April 3rd, 1905.

"Kellogg-Mackay-Cameron Co., Minneapolis, Minn.—Gentlemen: Your favor of the 30th ult. to hand. In reply will say that we are very much surprised that Mr. Brader has not paid you for material which he ordered from you last fall and which you wrote our firm about on Nov. 9th. We notice you write as though you had received a guaranty from us for Brader's goods, which is an error. We wrote you on Nov. 7th, stating that Mr. Brader had received the contract for plumbing and steam fixtures for the new Hotel Havre, and that he had informed us that he placed the order with your house on terms that he was to pay 60% of the bills when the material arrived here at Havre, and your recent letter is the first notification that he had not done so. We stated that we were prepared to meet the terms as above stated with Mr. Brader, and felt that you would be safe in shipping the goods to him. We do not remember of making any other arrangements with you, but for your information will state that we have not paid Mr. Brader up in full for his work on the hotel and will not do so until we hear from you. Aside from this, will state that Mr. Brader is honest and will pay his accounts. He appears to be willing to settle up the material account, but states that there are several matters needing adjustment with you before he can do so. We hope the matter will be settled in a satisfactory manner, and can assure you that we will do all in our power to assist in straightening out the affair.

"Very truly yours,                        Broadwater-Pepin Co.,
                                              "By E. T. Broadwater, Sect'y & Treas."

Plaintiff further adduced the testimony of C. V. Kellogg. Whereupon, plaintiff having rested its case, the defendants moved the court for a nonsuit and dismissal, on the ground that no proof had been adduced establishing or tending to establish the contract of guaranty pleaded in the complaint. The court, however, permitted the plaintiff to offer additional testimony, and Brader, being called, testified in effect that he was acquainted with the corporation, Broadwater-Pepin Company, and that Broadwater had done business for the company, which was all he knew of the relation of Broadwater to the company; that Broadwater was in the mercantile business in Havre, and had been for several years; and that Broadwater represented the company in the ordinary mercantile transactions. R. E. Hammond testified that according to common repute Broadwater transacted the business for the Broadwater-Pepin Company, which has always been his understanding. E. T. Broadwater testified that on April 3, 1905, he was the secretary and treasurer of the Broadwater-Pepin Company, and that he wrote the letter of that date.

The motion for a nonsuit being renewed, it was granted as to all of the defendants except the Broadwater-Pepin Company. E. T. Broadwater was again called for the defendants, and testified that he wrote the letter of November 7th, addressed to Kellogg-Mackay-Cameron Company, for Brader; that Carruth was the secretary and treasurer of the Havre Hotel Company, and that witness was the president thereof; that Brader came to him and asked him if he would give him a letter from the Broadwater-Pepin Company; that witness told him he could not write any letter from the corporation; that the Hotel Company would write it; that he thereupon wrote the letter, and signed it, and Carruth signed it with him; that he signed the same on behalf of the Havre Hotel Company; that Carruth took the letter and signed it, and witness did not know what Carruth had done with it; that he received the letter of November 9th, which was misplaced; that no further correspondence was had until he received the letter of the 30th of March, 1905; that he wrote the letter of April 3, 1905, in reply to the March letter; that he was a small stockholder in the Havre Hotel Company, which stock he subscribed for after the fire occurred in Havre; and that his firm, corporation, the Broadwater-Pepin Company, had no stock in the Havre Hotel Company. Brader and Carruth both corroborate Broadwater in his statement that the letter of November 7th was written in behalf of the Havre Hotel Company, that Carruth took some stock in the Hotel Company, and that the account on the part of the Hotel Company with Brader was settled by arbitration.

The defendant, having rested, moved the court to instruct the jury to return a verdict in its favor, and the plaintiff, at the same time, moved for a directed verdict in its favor and against the defendant Broadwater-Pepin Company, on the ground that there was no evidence in the case establishing or tending to establish a defense to plaintiff's cause of action, and that the evidence established a cause against the defendant Broadwater-Pepin Company. The court denied the motion of plaintiff, and sustained the motion of defendant Broadwater-Pepin Company, and granted judgment accordingly.

Galen & Mettler, of Helena, Mont., for plaintiff in error.

Clayberg & Horsky, of Helena, Mont., for defendants in error.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge (after stating the facts as above). The question for consideration is whether the trial court erred, first, in granting a nonsuit in favor of all the defendants except the Broadwater-Pepin Company, the corporation; and, second, in directing a verdict for the said Broadwater-Pepin Company. There can scarcely be a question that as to all the defendants, except the Havre Hotel Company, the nonsuit was properly granted. No evidence was adduced to show that either the Broadwater-Pepin Company, a copart-

nership, or E. T. Broadwater or E. C. Carruth, individually, signed the letter of November 7, 1904. Hence they, or either of them, cannot be held liable upon such alleged guaranty.

[1] The testimony of Broadwater, Carruth, and Brader tends very strongly to establish the fact, if there can be a question about it, that the letter of November 7th was written in behalf of the Havre Hotel Company, and was signed by Broadwater, president, and Carruth, secretary and treasurer, they acting in their official and not in their individual capacity; and whatever liability or obligation was entered into or incurred by the writing was the liability or obligation of the Havre Hotel Company, and not that of Broadwater or Carruth individually. This is, in effect, alleged in the answer; but it is further averred as a defense that the Havre Hotel Company was not authorized to bind itself by contract of guaranty.

There is evidence tending to show that Broadwater-Pepin Company, the corporation, was the active agent in the construction of the Havre Hotel, and that company concedes, as plainly as can be, writing the letter of November 7th, as witness its letter of April 3d, signed "Broadwater-Pepin Co., by E. T. Broadwater, Sect'y & Treas.," although the fact appears that it did not sign such letter. The letter of April 3d states, "We have not paid Mr. Brader up in full for his work on the hotel, and will not do so until we hear from you," which would seem to confirm its agency in the affair, while denying liability. It appears further, however, that Broadwater-Pepin Company had no interest—"not one cent," as expressed by Broadwater on the witness stand—in the Havre Hotel Company. What Donovan said as to the ownership of the hotel by Broadwater-Pepin Company is merely his own opinion or conclusion, without the statement of any facts to support it. Broadwater could not have signed the letter of November 7th for the Broadwater-Pepin Company, as he was not president, but secretary and treasurer, of that company, but was president of the Havre Hotel Company.

[2] But it is urged, notwithstanding, that the Broadwater-Pepin Company is bound by the alleged warranty, as evidenced by the letter of November 7th, through estoppel in remaining silent and thereby inducing plaintiff to act upon it, which is the real issue here. It will be noted that the letter of April 3d was written subsequent to the time that plaintiff had acted in filling the order of Brader for the materials, hence the letter could not have induced plaintiff in any way to extend credit to Brader.

The legal question involved is whether the Havre Hotel Company and the Broadwater-Pepin Company, or either of them, are bound or may be held liable upon a contract of guaranty. This is the second time the case has been here; the first coming up on the sufficiency of the complaint, which was held good.

The corporations here represented were organized under the general laws of the state of Montana, and a corporation so organized has the power "to enter into any obligations or contracts essential to the transaction of its ordinary affairs, or for the purposes of the corporation."

Section 3889, Rev. Codes of Montana. Section 3890 provides that "no corporation shall possess any corporate powers except such as are necessary to the exercise of the powers so enumerated," having reference to the previous section.

[3] As to the Havre Hotel Company, it may be assumed, as we have reached the conclusion that the trial court is in error in granting a nonsuit as to it, that it was not empowered by its articles of incorporation to enter into contracts or obligations of guaranty. And as to the Broadwater-Pepin Company, it appears, at least inferentially, that it also was not so empowered, by reason of the fact that it was a mercantile concern, and the authority to guarantee the obligations of others is not usual or common to the business. It is a well-settled principle of law that:

"A contract of a corporation, which is ultra vires, in the proper sense, that is to say, outside the object of its creation as defined in the law of its organization, and therefore beyond the powers conferred upon it by the Legislature, is not voidable only, but wholly void, and of no legal effect. The objection to the contract is, not merely that the corporation ought not to have made it, but that it could not make it. The contract cannot be ratified by either party, because it could not have been authorized by either. No performance on either side can give the unlawful contract any validity, or be the foundation of any right of action upon it."

It is unnecessary to state the reason upon which the principle is founded. Central Transp. Co. v. Pullman Car Co., 139 U. S. 24, 59, 11 Sup. Ct. 478, 35 L. Ed. 55; Thomas v. Railroad Co., 101 U. S. 71, 25 L. Ed. 950; Penn. Co. v. St. Louis, Alton, etc., R. R., 118 U. S. 290, 6 Sup. Ct. 1094, 30 L. Ed. 83; Humboldt Min. Co. v. American Manuf'g, Mining & Milling Co., 62 Fed. 356, 10 C. C. A. 415.

This is clear logic, and it has been held that a contract of guaranty, which is beyond the express or implied authority to execute, is void and unenforceable. M., W. & M. Plank Road Co. v. W. & P. Plank Road Co., 7 Wis. 59. The rule has application to railroad companies. They have no power to guarantee the bonds of another company, unless authorized by the act of incorporation or by other statutes to do so. Louisville, etc., Ry. Co. v. Louisville Trust Co., 174 U. S. 552, 567, 19 Sup. Ct. 817, 43 L. Ed. 1081.

[4] But this doctrine, which is referred to by Mr. Thompson in his work on Corporations as the strict doctrine of ultra vires, may not be invoked to defeat justice or work a legal wrong. 3 Thompson on Corporations (2d Ed.) § 2778. In Railway Co. v. McCarthy, 96 U. S. 258, 267, 24 L. Ed. 693, Mr. Justice Swayne says:

"The doctrine of ultra vires, when invoked for or against a corporation, should not be allowed to prevail, where it would defeat the ends of justice or work a legal wrong."

In San Antonio v. Mehaffy, 96 U. S. 312, 315, 24 L. Ed. 816, the distinguished jurist gave expression to the same principle in this wise:

"The doctrine of ultra vires, whether invoked for or against a corporation, is not favored in the law. It should never be applied where it will defeat the ends of justice, if such a result can be avoided."

Perhaps the doctrine as announced by Mr. Justice Swayne, which is one really of estoppel, is not strictly applicable, unless in exceptional cases, where the corporations involved are of a public or quasi public character; but it would seem to be suited with strong reason and emphasis to the operation of merely private corporations, when such corporations have received the benefits of the obligations which they are seeking to repudiate, and has been so applied in a variety of cases. Butler v. Cockrill, 73 Fed. 945, 953, 20 C. C. A. 122; In re Waterloo Organ Co. (D. C.) 128 Fed. 517; Quinby v. Consumers' Gas Trust Co. (C. C.) 140 Fed. 362; Wayte v. Red Cross Protective Society (C. C.) 166 Fed. 372; Burke Land & Live Stock Co. v. Wells Fargo & Co., 7 Idaho, 42, 60 Pac. 87; Meholin v. Carlson, 17 Idaho, 742, 107 Pac. 755, 134 Am. St. Rep. 286; Carson City Sav. Bank v. Carson City Elevator Co., 90 Mich. 550, 51 N. W. 641, 30 Am. St. Rep. 454; Whitney Arms Co. v. Barlow et al., 63 N. Y. 62, 20 Am. Rep. 504; Timm v. Grand Rapids Brewing Co., 160 Mich. 371, 125 N. W. 357, 27 L. R. A. (N. S.) 186; Iowa Drug Co. v. Souers, 139 Iowa, 72, 117 N. W. 300, 19 L. R. A. (N. S.) 115; Marshalltown Stone Co. v. Des Moines Brick Mfg. Co., 149 Iowa, 141, 126 N. W. 190; First National Bank of Kansas City v. Guardian·Trust Co., 187 Mo. 494, 86 S. W. 109, 70 L. R. A. 79; Whitehead v. American Lamp & Brass Co., 70 N. J. Eq. 581, 62 Atl. 554; Earle v. American Sugar Refining Co., 74 N. J. Eq. 751, 71 Atl. 391; First Nat. Bank of Lineville v. Alexander, 152 Ala. 585, 44 South. 866.

[5] To apply the principle here, the Havre Hotel Company, a corporation merely private in its organization and business relations, was engaged in the construction of a hotel building. Brader was a contractor for putting in the plumbing appliances, and ordered his materials and supplies from the plaintiff company. Along with the order was transmitted to the plaintiff the letter of November 7th. The plaintiff company furnished the materials on the strength of the letter. The Havre Hotel Company got the benefit of the materials, and, while the Hotel Company may have paid Brader in full of his contract, it. was in a position at all times to protect itself against its guaranty by withholding from Brader sufficient to pay plaintiff its demand. It did not do this, and, having received the benefit of the materials furnished by the plaintiff upon its guaranty that the price thereof should be paid by Brader, it would work a palpable injustice to the plaintiff if the Hotel Company was not required to pay the demand. In other words, it would defeat justice and work a legal wrong to permit the Hotel Company to escape on the plea that its contract of guaranty was beyond its power to make. We are of the opinion that under the conditions attending the transaction the Hotel Company is estopped to deny its liability under the guaranty.

It is quite different with the Broadwater-Pepin Company. It did not sign the guaranty, although it might have inferentially, by the letter of April 3d, admitted responsibility under it. The materials were not furnished on the Broadwater-Pepin Company's

responsibility, for they were furnished on the guaranty of November 7th, which was the contract of the Havre Hotel Company. The former company has no interest in the latter, and received no benefit from the materials furnished by plaintiff for the construction of the hotel building. With it, the elements of estoppel against insisting that the contract of guaranty is ultra vires and void are entirely wanting. It was engaged in mercantile business, and the power of guaranteeing the obligations of others would appear, as previously indicated, to be foreign to the usual purposes of such a business.

We are of the opinion, therefore, that the Broadwater-Pepin Company is not estopped to deny liability under the alleged guaranty, and the trial court was not in error in directing a verdict in its behalf. But for the error in granting the nonsuit as to the Havre Hotel Company, the judgment rendered must be reversed, and the cause remanded, for such other proceedings as may seem proper not inconsistent with this opinion.