LEWIS, Banking Com'r, v. FIFTH-THIRD NATIONAL BANK OF CINCINNATI.

(Circuit Court of Appeals, Sixth Circuit. June 7, 1921.)

No. 3494.

1. Banks and banking ⬢101—Directors of bank not entitled to maintain action based on ultra vires contract.

A state bank commissioner, in behalf of the creditors of an insolvent state bank, brought suit against another bank to recover collateral pledged for a loan which created an indebtedness in excess of that permitted by the statutes of the state, but authorized by formal action of the directors. Pending the suit, the directors, who were liable under the statute for any indebtedness of the bank created by them in violation of law, paid to the commissioner the amount of the bank's indebtedness, and took from him an assignment of its assets. *Held*, that the suit could no longer be maintained for their benefit, either in their own names or in that of the commissioner.

2. Corporations ⬢487(1)—Cannot avoid ultra vires contract which has been executed by the other party.

A private corporation cannot avail itself of the fact that a contract made by it was ultra vires, either as a defense or as the basis of an action, where the contract has been fully executed in good faith by the other party and the corporation has received the benefit of it.

**3. Courts ☞372 (5)—Federal court not bound by state decisions as to rights under ultra vires contract.**

The question of the rights and remedies of the parties to an ultra vires contract is one of general jurisprudence, on which a federal court is not bound by state decisions, but must exercise its own judgment in a case before it.

**4. Parties ☞6 (1)—Court will regard rights of real parties in interest only.**

A court will determine an action in accordance with the rights of the real parties in interest, without regard to form or to those who are nominal parties only.

In Error to the District Court of the United States for the Western Division of the Southern District of Ohio; John W. Peck, Judge.

Action at law by James P. Lewis, Banking Commissioner of the Commonwealth of Kentucky, against the Fifth-Third National Bank of Cincinnati. Judgment for defendant, and plaintiff brings error. On motion by defendant to dismiss. Motion granted.

On the 11th day of April, 1906, George Alexander and eight other citizens of Kentucky organized a banking corporation under the name of George Alexander & Co., Bankers, which name was later changed to the George Alexander & Co. State Bank, Incorporated. The articles of incorporation provided among other things that the highest amount of indebtedness or liability which the corporation might incur should not at any time exceed $10,000 over and above its liabilities to depositors and its liabilities upon bills of exchange, checks, or drafts upon other banks having its funds upon deposit. At divers times between January 22, 1914, and May 5, 1914, inclusive, this bank borrowed from the defendant, The Fifth-Third National Bank of Cincinnati, three several sums, aggregating $35,000, and at the same time indorsed and delivered to the defendant as collateral security 16 promissory notes, aggregating about $56,000.

The George Alexander & Co. State Bank later became insolvent and turned over its property to Thomas J. Smith, banking commissioner of the commonwealth of Kentucky, and Buckner Woodford, special deputy banking commissioner of that commonwealth, who took possession thereof and proceeded to wind up the affairs of the insolvent bank in pursuance and by authority of chapter 4 of the Session Acts of the General Assembly of the commonwealth of Kentucky of 1912. A demand was made upon the defendant by the banking commissioner and special deputy banking commissioner for the return of all the notes held by it as collateral to secure the payment of the debts due it from the George Alexander & Co. State Bank, which demand was refused, and later this action was brought in the United States District Court for the Southern District of Ohio, Western Division, for an order directing this defendant to deliver said notes held by it as collateral to the plaintiffs as banking commissioner and deputy banking commissioner of the commonwealth of Kentucky, or in lieu thereof a judgment for their value. This suit was based upon the provision in the charter of the George Alexander & Co. State Bank limiting the amount of indebtedness that it might incur to $10,000. Later George C. Speer, as banking commissioner, was substituted as plaintiff in place of Thomas J. Smith, banking commissioner, and Buckner Woodford, as deputy banking commissioner. When the term of Geo. C. Speer as banking commissioner expired, his successor in office, the present plaintiff in error, Jas. P. Lewis, was substituted as party plaintiff.

On November 14, 1914, an amendment to the petition was filed, which averred, among other things, that the defendant had collected $43,640.37 on these notes deposited with it as collateral security, and had applied that sum to the payment of the $35,000 indebtedness, evidenced by the three promissory notes and the $8,640.37 overdraft, with interest thereon owing by the George Alexander & Co. State Bank to the defendant. The petition admitted that

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

$10 000 of this money collected was properly applied to the payment of the first $10,000 note, and asked judgment in the sum of $33,640.37, the balance of the sum realized upon the collateral securities and applied by the defendant to the payment of the two other notes and overdraft.

The defendant filed an amended answer to the petition as amended, in which answer, among other things, it averred that J. W. Bacon, W. W. Mitchell, R. B. Hutchcraft, E. P. Claybrook, John M. Brennan, and Harry Clay were and had been continuously since June 29, 1907, the duly elected, qualified, and acting directors of said bank and its predecessor, George Alexander & Co., Bankers; that said board of directors, or a majority of them, by resolution formally adopted and furnished by said bank to defendant herein, authorized the several loans and each of them thereafter made by defendant to said bank, which said loans were made and the collateral accepted by defendant in the regular course of business without knowledge of any restriction upon the power of said bank to make the same; that said directors are and have been at all times herein collectively able to respond to any judgment or judgments in amounts sufficient to make good all valid outstanding claims of creditors and depositors of the George Alexander & Co. State Bank. The defendant also averred that on July 18, 1914, the original plaintiffs in this action filed in the circuit court of Bourbon county, Ky., a petition against these directors, alleging that as such directors they had unlawfully declared and paid the sum of $44,800 to the stockholders, but that said bank had not earned said dividends, or any part thereof, and that at the time such dividends were paid the George Alexander & Co. State Bank was insolvent, and that such declaration and payment of dividends was in violation of the statutes of Kentucky; that said directors were liable, not only for the dividends so wrongfully paid, but for all valid claims against the bank totaling $143,081.23, on the ground that through negligence of said defendants as such directors the president of the George Alexander & Co. State Bank had made excessive loans to insolvent persons, and had allowed large overdrafts to insolvent persons, and had appropriated large amounts of the money of said bank to his own use; that said suit is still pending and undetermined on the docket of said circuit court of Bourbon county, Ky., and is being prosecuted by the plaintiff in this action, substituted for Thomas J. Smith, banking commissioner.

The defendant further averred that on February 25, 1915, the predecessor of Thomas J. Smith, as banking commissioner of the commonwealth of Kentucky, and Buckner Woodford, as special deputy banking commissioner of said commonwealth, filed their certain other petition in said circuit court of Bourbon county, Ky., against these same directors, alleging that they were liable jointly, severally, and individually in the sum of $83,319, with interest thereon, on the ground that they had negligently and in violation of their duties as directors of said bank loaned and permitted to be borrowed by one George Alexander, the president of said bank, and to other persons from time to time, without having security or sufficient security for said loans, certain moneys of said bank in excess of the amount or amounts which the law of Kentucky permitted to be loaned by said bank to said person or persons, and had permitted depositors in said bank to overdraw their accounts, contrary to law, which cause is still pending and undetermined, and is being prosecuted by plaintiff as the successor of said Thomas J. Smith, banking commissioner. The defendant also denies that all the assets of said George Alexander & Co. State Bank will not be sufficient to discharge its indebtedness to its depositors and creditors having valid claims, and that it will be necessary to use said notes given to defendant as collateral, or the proceeds, to satisfy the creditors or depositors of the State Bank; that if said loans were ultra vires the directors of said State Bank are personally responsible to plaintiff, and that this suit was instituted and is prosecuted for the benefit of said persons, directors of said bank and primarily liable for its alleged losses, and who are responsible and financially able to meet said responsibility, for the purpose of avoiding or reducing their liability.

The plaintiff filed a motion to strike this answer from the file, or, in the alternative, to strike out certain averments therein pleaded. Pending this

motion the present plaintiff in error succeeded George G. Speer as banking commissioner for the commonwealth of Kentucky, and filed a supplemental petition and second amendment to the petition. The court overruled the motion to strike the amended answer from the files, and it also overruled in part the alternative motion to strike certain averments from the amended answer, but sustained that motion as to averments in that answer and which are not now important.

The plaintiff then filed a reply to this amended answer, denying that the directors of the George Alexander & Co. State Bank named in the answer are or have been at all times collectively able to respond to any judgment or judgments in amounts sufficient to make good all valid outstanding claims of creditors and depositors. It denied that this suit is being prosecuted in the interest of the directors of the George Alexander & Co. State Bank; that in the action brought by this plaintiff in the Bourbon county court against these directors he did not allege as a fact that said directors were liable, but avers that in said actions the liability of said directors was alleged as a legal conclusion; that, for lack of information upon which to form a belief, the plaintiff denies that the amount necessary to pay the creditors and depositors of said George Alexander & Co. State Bank can be recovered from the defendants in said cases in the Bourbon county circuit court of Kentucky, and avers that until the conclusion of said actions it will be impossible to determine whether or not such amount or amounts can be recovered from said defendants.

Upon this state of the pleadings the court entered judgment for the defendants, and this proceeding in error is brought in this court to reverse that judgment. A motion has been filed in this court by the defendant in error to dismiss this action, on the ground that plaintiff in error has adjusted and settled the claims of all creditors of George Alexander & Co. State Bank, and has assigned all the assets of said bank to J. W. Bacon, W. W. Mitchell, John M. Brennan, E. P. Claybrook, and Harry B. Clay, being the directors of said bank named in the amended answer of the plaintiff at page 30 of the printed record. In support of this motion there was filed in this court a certified copy of the order entered by the Bourbon county circuit court of Kentucky, affirming a compromise agreement between the parties to suits Nos. 10227 and 10094 in that court, in which compromise agreement it is provided that each depositor and bona fide creditor should receive his claim as theretofore allowed in the amount and upon which the distribution has heretofore been made, without interest, less costs and allowances hereinafter incurred and made. It was further provided in the order confirming the compromise agreement that, in case any creditor or depositor fails or refuses to accept the amount due him or her under this order on or before January 1, 1922, the amount so due such creditor shall be paid by the banking commissioner to J. W. Bacon, W. W. Mitchell, John M. Brennan, E. P. Claybrook, and Harry B. Clay immediately after said date and without further order of this court.

This order confirming this compromise was entered October 18, 1920, and on November 24, 1920, a further order was entered, which order states that these defendants had paid in pursuance of this compromise agreement $93,-277.82, which said sum the special deputy banking commissioner accepted in full satisfaction and settlement of all claims which he as special deputy banking commissioner may have against said parties, and thereupon agreed to dismiss and settle the two cases Nos. 10227 and 10094 pending in that court. Upon these facts, as above stated, it was ordered that "both of said suits be dismissed, settled." This order further recites that "the claim of the banking commissioner against R. B. Hutchcraft, one of the defendants in said two suits, who has not paid any part of said money, is hereby assigned to said J. W. Bacon, W. W. Mitchell, John M. Brennan, E. P. Claybrook, and Harry B. Clay, and all other assets of Geo. Alexander & Co. State Bank, after the settlement is carried out according to the order entered herein on October 18, 1920, are also assigned to them."

It is admitted by the plaintiff in error that this settlement was made by him with the approval of the court in the two several cases pending against

these directors of the George Alexander & Co. State Bank, as shown by these certified copies of the order entered by that court in reference thereto; that the defendants in that suit other than Hutchcraft paid to him the sum of $93,277.82 in full settlement and satisfaction of the claims asserted against them by the banking commissioner of the commonwealth of Kentucky in both of these actions, and that in pursuance of the settlement agreement, and in consideration of the payment to him by these directors of sufficient money with which to discharge the debts of the defunct bank, he has assigned all the assets of that bank, including the claim in suit, to these directors.

E. L. Worthington, of Maysville, Ky. (Worthington, Cochran & Browning, of Maysville, Ky., on the brief), for plaintiff in error.

Lawrence Maxwell, of Cincinnati, Ohio (Joseph S. Graydon and Joseph L. Lackner, both of Cincinnati, Ohio, on the brief), for defendant in error.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DONAHUE, Circuit Judge (after stating the facts as above). [1] In the disposition of this motion it is unnecessary to refer to the assignments of error upon which the plaintiff in error relies for a reversal of this judgment. This plaintiff in error has assigned and transferred to the directors of the George Alexander & Co. State Bank whatever right he may have had in his official capacity as banking commissioner of the commonwealth of Kentucky to recover these collateral securities from the Fifth-Third National Bank of Cincinnati. He has no further personal or official interest in the prosecution of this proceeding in error, and if the judgment were reversed and the cause remanded, a recovery upon the cause of action stated in the petition would not inure to his benefit either in his personal or official capacity, or to the benefit of the creditors of this defunct bank.

It is insisted, however, that not only under the rule of the common law, but also under the express provisions of statutes both of Kentucky and Ohio, these bank directors, as assignees of "all other assets of the George Alexander & Co. State Bank," are entitled to prosecute this action in the name of the assignor. That proposition is undoubtedly true, but, on the other hand, it is wholly immaterial in whose name this action is prosecuted. The substantial question is: For whose benefit is it prosecuted? That is to say, if the parties for whose benefit it is prosecuted could not maintain this suit in their own names and recover for their own benefit, then it follows as a corollary that they cannot prosecute it in the name of the assignor, who has no further personal or official interest therein.

If it were conceded that the banking commissioner of the commonwealth of Kentucky had the right and authority to transfer and assign to these directors of the George Alexander & Co. State Bank "all other assets" of that bank, not expended by him in the payment of creditors, beyond question he could not transfer to these assignees any part or parcel of his official character, or his right as such officer of the commonwealth of Kentucky to represent either the state of Kentucky or the creditors of this insolvent bank. This action is no longer in the interest of, nor for the benefit of, the creditors, and it must now be main-

tained, if at all, for the benefit of the directors of the insolvent bank that negotiated this loan from the defendant bank in excess of its charter powers to incur indebtedness.

The question is therefore fairly presented upon this motion whether the George Alexander & Co. State Bank, or these directors of that bank, as assignees of its property interest therein, can successfully maintain an action for the recovery of this collateral security without making restitution to the defendant bank of the money secured by the insolvent bank through and by this ultra vires contract. Upon the clearest principle of law and equity, the answer to this must be in the negative. By this transfer, assignment, and delivery of this collateral security, the George Alexander & Co. State Bank obtained from the defendant bank $43,640.37 of the lawful money of the United States. The balance of this collateral security, over and above this sum of money, was returned by this defendant bank to the banking commissioner of Kentucky, so that for every dollar of these securities, not specifically returned to the banking commissioner, the George Alexander & Co. State Bank, of which these assignees were the directors, received a dollar in money, which money came into the possession and control of that bank and these directors, and was applied to its purposes, and presumably increased to that extent the assets available to creditors when the bank became insolvent and passed into the hands of the banking commissioners.

Section 598 of the Kentucky Statutes provides that:

"If any director or directors of any bank shall knowingly violate, or permit any officer or employé of the bank to violate any of the provisions of the laws relating to banks, the directors so offending shall be jointly and severally, individually liable to the creditors and stockholders for any loss or damage resulting from such violation."

The law of Kentucky provides, among other things, that no corporations shall incur indebtedness or liability in excess of the amount named in its charter. It is averred in the answer, and not denied in the reply:

"That the board of directors, or a majority of them, by resolution formally adopted and furnished by said bank to defendant herein, authorized the several loans and each of them thereafter made by defendant to said bank."

Regardless, however, of the averments and admissions in the pleading, the law imposed upon these directors the duties of directing the affairs of this bank, and their responsibility in that behalf could not be transferred to its president. The banking commissioner of the commonwealth of Kentucky brought two separate actions in the Kentucky state court against these directors to recover for the benefit of creditors. These suits were based upon the violation by these directors of the statute of Kentucky above cited, and also upon their gross failure, neglect, and violation of their duties as directors of said bank in other respects. In compromise of these suits, these directors paid to the banking commissioner of Kentucky the sum of $93,277.82 for the benefit of creditors other than this defendant bank, and now seek in this action to reimburse themselves for this loss from one of the victims of this same unlawful and careless course of conduct in the management of

the affairs of the insolvent bank upon which their liability to its creditors was predicated, and in discharge of which liability they paid this large sum of money.

[2] The rule of ultra vires differs materially in its application to private corporations and its application to public or municipal corporations. Kellogg-Mackay Co. v. Havre Hotel Co. et al., 199 Fed. 727, 118 C. C. A. 165. The question here involved, however, is fully answered by the Supreme Court of the United States in the case of the Pullman Palace Car Co. v. Central Transportation Co., 171 U. S. 138, 18 Sup. Ct. 808, 43 L. Ed. 108. In that case the contract had previously been declared void by the United States Supreme Court in an action between the same parties (139 U. S. 24, 11 Sup. Ct. 478, 35 L. Ed. 55), because ultra vires the charter of the Central Transportation Company, and also because it involved an abandonment by that company of its duties to the public. The Transportation Company by cross-appeal in this later action asked for an accounting of profits which the Pullman Company had derived by its use of this property transferred to it under this void agreement, and that it should in the future from time to time account for the sums which should be due by reason of further operations under this contract, and also for the return of its property delivered by it under this void contract to the Pullman Company, and compensation for any part of that property which it was impossible to return. In the trial court judgment was entered in favor of the Transportation Company in the sum of $4,235,044. This judgment was reversed by the Supreme Court, because the recovery was too large, and the cause was remanded to the Circuit Court for the Eastern District of Pennsylvania, with directions to enter a judgment for the Transportation Company in the sum of $727,846.50 and interest from January 5, 1885, which amount represented the value of the property transferred by that company to the Pullman Company under this ultra vires lease at the date of the repudiation of the lease, but refused any relief for the use of the property during the time both parties acted under its provisions, upon the theory that the rent paid compensated for that use. The Supreme Court in this case discussed at length the authorities applicable to the question here involved and concluded its consideration of these authorities with this statement:

"They are substantially unanimous in expressing the view that in no way and through no channels, directly or indirectly, will the courts allow an action to be maintained for the recovery of property delivered under an illegal contract where, in order to maintain such recovery, it is necessary to have recourse to that contract. The right of recovery must rest upon a disaffirmance of the contract, and it is permitted only because of the desire of courts to do justice as far as possible to the party who has made payment or delivered property under a void agreement, and which in justice he ought to recover."

In this case it appears that the property transferred from the Central Company to the Pullman Company under this void contract had substantially disappeared and could not then be returned; but notwithstanding that fact it required the Pullman Company to compensate the Transportation Company for its value.

274 F.—38

In the case of Kellogg-Mackay Co. v. Havre Hotel Co. et al., supra, it was held:

"The doctrine of ultra vires may not be invoked to defeat justice or work a legal wrong"—citing in support of this 3 Thompson on Corporations (2d Ed.) § 2778; Railway Co. v. McCarthy, 96 U. S. 258–267, 24 L. Ed. 693.

The court quotes at some length from the opinion by Mr. Justice Swayne in Railway Co. v. McCarthy, supra, and concludes with this language:

"Perhaps the doctrine as announced by Mr. Justice Swayne, which is one really of estoppel, is not strictly applicable, unless in exceptional cases, where the corporations involved are of a public or quasi public character, but it would seem to be suited with strong reason and emphasis to the operation of merely private corporations, when such corporations have received the benefits of the obligations which they are seeking to repudiate, and has been so applied in a variety of cases."

The court cites in support of this proposition a great many cases decided, not only by the federal courts, but by many state courts of last resort. The doctrine announced by the Supreme Court of the United States in Eastern Building & Loan Association v. Williamson, 189 U. S. 122–129, 23 Sup. Ct. 527, 47 L. Ed. 735, applies with peculiar force to the facts in this case. The court in its opinion (189 U. S. 129, 23 Sup. Ct. 530, 47 L. Ed. 735) quotes with approval from the New York Court of Appeals in the case of Vought v. Eastern Building & Loan Ass'n, 172 N. Y. 508, 65 N. E. 496, 92 Am. St. Rep. 761, the following:

"It is now well settled that a corporation cannot avail itself of the defense of ultra vires when the contract has been, in good faith, fully performed by the other party, and the corporation has had the benefit of the performance and of the contract. * * * While they have no right to violate their charters, yet they have capacity to do so, and are bound by their acts where a repudiation of them would result in manifest wrong to innocent parties, and especially where the offender alleges its own wrong to avoid a just responsibility. * * * When it [the contract] becomes executed by the other party, it is estopped from asserting its own wrong and can not be excused from payment upon the plea that the contract was beyond its power."

Following this quotation from the New York Court of Appeals, the Supreme Court of the United States adds:

"We deem it unnecessary to add any observations of our own to these satisfactory declarations of the law of New York."

Undoubtedly a private corporation may defend against an action to enforce an executory contract upon the plea of ultra vires, where neither party has performed, or it may repudiate an ultra vires contract, upon making full restitution to the other contracting party, but the authorities are uniform that it can not keep the property of another obtained under and by the terms of such contract, and refuse performance on its part upon the theory that the contract is ultra vires its charter powers; otherwise, the plea of ultra vires would degenerate into a mere instrumentality of fraud, deceit, and dishonesty, by means of which a corporation might appropriate to its own use the private property of others, without fear of punishment or the necessity of making restitution.

[3] The Kentucky Court of Appeals decided in the case of Bank v. Smith, 170 Ky. 512, 186 S. W. 482, Ann. Cas. 1918B, 959, that a contract by the George Alexander & Co. State Bank similar to the one now under consideration, incurring indebtedness in excess of its charter limitations, was ultra vires and void. This decision is based upon a construction of the statutes of that state, and to that extent is controlling upon this court. The rights and remedies of the parties to this ultra vires contract are questions of general jurisprudence, and therefore the decision in that respect is not controlling, but must be decided by this court upon the facts in this case. Insurance Co. v. Moore, 231 U. S. 543, 34 Sup. Ct. 186, 58 L. Ed. 356; Kuhn v. Coal Co., 215 U. S. 349, 30 Sup. Ct. 140, 54 L. Ed. 228. While we do not question the correctness of the judgment in that court in reference to the rights and remedies of the parties to that suit, yet that part of the judgment in the Kentucky case was predicated upon the rights of the banking commissioner of the commonwealth of Kentucky, who was not a party to the ultra vires contract, and who was prosecuting that suit in the public interest, to enforce the public policy of the state, as well as in the interest of the creditors of the insolvent bank.

[4] From the proofs submitted upon the hearing of this motion the banking commissioner, as heretofore stated, has no further official interest in this suit. He is no longer prosecuting this proceeding in error in the public interest, or in the interest of the creditors of the insolvent bank. The assignment by him of these securities did not convey or transfer to the assignees rights which the Kentucky statute vested in that officer for the protection of general creditors, but only the mere property interests of the George Alexander & Co. State Bank therein, just the same as if that bank had directly made the assignment to them, instead of through and by the banking commissioner. Therefore the situation now presented in this case is not different than if the insolvent bank itself had originally brought this action against this defendant for the recovery of this collateral security, and this is further emphasized by the fact that these assignees are the directors of the insolvent bank who were responsible for this bank entering into these ultra vires contracts. Whether or not this suit be prosecuted to final judgment in the name of the assignor is a matter of mere form only, and not of substance. In such cases courts will not permit themselves to be blinded or deceived by mere forms of law, but, regardless of form, will deal with the substance of the transaction involved in identically the same manner as if the real parties in interest were substituted as parties plaintiff. Railway Co. v. Civic Ass'n, 247 U. S. 490, 38 Sup. Ct. 553, 62 L. Ed. 1229; Sudduth v. Coal Co. (C. C. A.) 268 Fed. 433.

Under these facts which have occurred subsequent to the decision of the Kentucky Court of Appeals in the case of Bank v. Smith, supra, this court is called upon to apply the settled rule of general jurisprudence in reference to ultra vires contracts, which rule in the absence of restoration of status quo leaves the parties where it finds them. It follows, therefore, that if the George Alexander & Co. State Bank, or that bank's assignees, cannot recover these securities from the defendant bank without first making full restitution to that bank, it would be an

idle performance for this court to reverse the judgment in this case, for if the judgment were reversed and the cause remanded, it would be the duty of the trial court upon the facts established upon the hearing of this motion and the admissions of the pleadings, to render a like judgment.

For the reasons above stated, the motion of the defendant in error to dismiss this proceeding in error is sustained.

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes